[S. F. No. 5043. In Bank.—May 9, 1910.]

## MARIA V. BALLARD, Appellant, v. LOUIS TITUS et al., Respondents.

RIGHT OF WAY—PRIVATE ROAD—WIDTH—CONSTRUCTION OF RESERVATION IN DEED.—A reservation in a deed, "saving and excepting therefrom a right of way thirty feet in width beginning at the old Ballard bridge on the old Fish Ranch Road, . . . and leading thence over said above described tract of land to the remaining land of the grantors to the rear and east of the land conveyed," does not import that the road is to be full thirty feet in width, but is to be construed as reserving only a strip of land thirty feet in width, to be afterwards selected and located for the right of way, and for the construction of a road as wide as it may be made on said strip without casting any embankments on adjoining land, especially where it appears that a road so constructed would be sufficient to connect with the old road referred to.

ID.—OBJECT OF SPECIFICATION OF WIDTH—LIMIT OF EXTENT OF EASEMENT.—The object of the specification of the width of thirty feet, appears to be to place without the realm of controversy all questions as to the amount of land which the owner of the dominant tenement might take, and the owner of the servient tenement be compelled to give for the purposes of the easement.

ID.—DEFINITION OF "RIGHT OF WAY."—A "right of way" is defined simply as "the privilege which one person or particular description of persons may have of passing over the land of another in some particular line,"—a mere privilege of passing over such land, under the circumstances of this case, with the implied right, under such

CLVII Cal.—43

circumstances, to make such changes in the surface of the land as are necessary to make it available in a convenient manner.

ID.—RIGHT TO FULL WIDTH SPECIFIED.—Where the width of this mere right of way is expressly specified, the owner may have the absolute right of use to the limits of the specified width even though the result be to give him a wider way than is necessary, free of interference by the owner of the servient estate; but there can be no appropriation of land lying beyond the specified width.

ID.—RESERVATION FOR CONTINUANCE OF EXISTING ROAD.—Where it appears that the desired reservation was sought for the continuation of the "Fish Ranch Road" to the property of the grantor across the land granted, and that such road was a narrow, hilly country road, and it is not questioned that the strip thirty feet wide located by the court will enable plaintiff to have a roadway within the thirty-foot limit as wide as that road, that fact must be regarded as very potent.

ID.—STATUTORY CONSTRUCTION OF RESERVATION—LIMIT OF USE.—Giving full force to the provisions of our statute, that "a reservation in any grant . . . is to be interpreted in favor of the grantor" (Civ. Code, sec. 1069), it is held that the reservation here involved limited plaintiff's use of the servient tenement to the strip thirty feet in width, which is all that is reserved in the grant.

ID.—RIGHT TO SELECT UNLOCATED RIGHT OF WAY—PRIOR RIGHT OF OWNER OF SERVIENT TENEMENT.—Where an unlocated right of way is granted or reserved, the owner of the servient estate may in the first instance designate a reasonable way, and if he fails to do so, the owner of the dominant estate may designate; but it is held that findings sufficiently sustained by the evidence establish that there was no such failure in this case of the servient owner as to entitle plaintiff as the dominant owner to make the selection.

ID.—SELECTION IF MADE BY DOMINANT OWNER MUST BE REASONABLE—UNREASONABLE SELECTION.—If the dominant owner is entitled to make a selection, his selection must be reasonable as to both parties in view of all the circumstances. *Held,* that the trial court was warranted in concluding that the route selected by the plaintiff was unreasonable, in view of all the circumstances in proof.

ID.—DETERMINATION IN EQUITY.—Where the case is one where the parties have been unable to agree upon a reasonable route, the plaintiff may appeal to a court of equity to have the same determined.

ID.—DECREE NOT LIMITING USE OF ROAD—MODIFICATION CONSENTED TO—WAIVER OF RIGHT TO GATES.—The decree which is to be modified by consent of respondents so as to dispense with the right to gates, does not limit the right to the use of the way decreed to any particular person or persons, but it will be an open highway, appurtenant to the land of the plaintiff, regardless of the way in which it may hereafter be subdivided, and available to the use of all who may have occasion to go to or from such land.

ID.—POWER OF EQUITY NOT LIMITED TO RIGHT OF WAY CLAIMED BY PLAINTIFF.—Where the cause of action stated was for relief in

equity to have a right of way established, the power of equity to fix a reasonable and suitable right of way in view of all the circumstances in proof, is not limited to the establishment of the right of way claimed by the plaintiff. She could not be held to have acquired any title to a right designated by herself in no way acquiesced in; but it would have been prejudicial error to have refused to decree to her the right of way reserved upon a reasonable and suitable location thereof, which right was admitted in the answer and established by the evidence.

ID.—PLEADINGS—CROSS-COMPLAINT NOT REQUIRED.—The matters adjudicated were all within the issues tendered by the complaint and answer, and no cross-complaint by the defendants was necessary to authorize the court to designate for plaintiff such way as it might find to be reasonable in view of all the circumstances.

ID.—AMENDMENT OF COMPLAINT TO CONFORM TO JUDGMENT.—The court properly permitted the plaintiff to amend the complaint so as to specifically describe the right of way fixed by the judgment.

ID.—TRIAL OF RELATIVE MERITS OF ROUTES SURVEYED—PROPER REFUSAL TO REOPEN CASE—CONSENT OF RESPONDENTS TO MODIFICATION OF ROUTE.—Where the trial was fully had as to the relative merits of one route surveyed for the plaintiff and another route surveyed for the defendants, and the court found substantially in favor of the latter route, it properly refused to open up the case at the instance of plaintiff. But where the defendants, as respondents upon appeal, consent to the fixing of the exact route of their survey at appellant's desire, the appellant will be allowed time to express such desire, and to have the judgment modified accordingly, as it must also be modified to dispense with gates.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Hewlett, Bancroft & Ballentine, for Appellant.

Titus & Creed, and A. M. Kidd, for Respondents.

ANGELLOTTI, J.—This action is one brought by plaintiff to obtain a decree quieting her title to an alleged right of way over a strip of land thirty feet in width specifically described in the complaint, the same being a portion of a parcel of land in Alameda County, generally described in her complaint, conveyed by her to one Frederick E. Magee subject to a reservation of a right of way, and conveyed by a successor in interest of said Magee to defendant Claremont Hotel

Company, the present owner. The claim of plaintiff was based upon allegations of her complaint showing that the land so conveyed, being a parcel of about thirteen acres, was the "front portion" of a tract of about forty acres owned by her, that in her deed to Magee she expressly reserved a permanent right of way thirty feet in width beginning at a point on the parcel conveyed where the same touched a public road and leading thence to the "rear portion," that defendants had refused to designate or locate said right of way and that she had therefore selected and surveyed the same. It was further alleged that the route selected by her is the only accessible and reasonably suitable approach to the "rear portion," and that it imposes no unnecessary burden on defendants, but that defendants refuse to recognize or permit such selection, and exclude her from such right of way. By amendment to her complaint she alleged that under such reservation she was entitled to an actual roadway thirty feet in width, and that to obtain the same she was entitled outside of the thirty feet to make such changes in the surface of defendants' land as are necessary to construct said road to such width, and asked that the decree adjudge her rights in that regard. By another amendment she alleged her right to have such road free of gates or bars and asked that the decree so adjudge. By their answer defendants admitted that the deed from plaintiff to Magee contained the following reservation, which was, in fact, the only reservation contained therein, viz.: "Save and excepting therefrom a right of way thirty feet in width, beginning at the old Ballard bridge on the Old Fish Ranch Road, said bridge being across Harwood Creek, and leading thence over said above described tract of land to the remaining land of said Maria Virginia Ballard to the rear and east of the land hereby conveyed." They denied that they had ever refused to designate or locate a right of way, and denied that the route selected by plaintiff was the only accessible or reasonably suitable approach to plaintiff's land, and denied that it would impose no unnecessary burden on defendants, setting up in detail why it would be most detrimental to them and materially and irreparably injure them. They alleged that another route, generally described, would be more direct and an equally accessible approach and much less burdensome to

them, and that they had at all times been willing to allow such route. They denied plaintiff's right to insist on a road-way thirty feet wide, insisting that plaintiff must be confined to building a road within a strip thirty feet in width, and that plaintiff could not go outside of such strip for any purpose, and also denied that she had a right to a road without gates or bars. At the close of the argument, an order was made, on application of the respective parties and without objection or exception, that plaintiff be permitted to file certain amendments, and that defendants be allowed to amend their answer to conform with the proofs by inserting a particular description of the right of way tendered by defendants "being the amendments to answer presented in court." By that amendment defendants set forth a particular description of a proposed route, practically the same as the one known in the case as the Huggins route or survey, alleged to be reasonable and suitable and to correspond to the route generally described in their original answer, and alleged that prior to the commencement of the action, defendants offered a right of way substantially in accord therewith, but that plaintiff refused to accept the same or any other route than the one she had selected, which was the one known as the Prather route or survey. By an amendment they offered the route so described therein. In their original answer they had asked that if the court found plaintiff to be entitled to a right of way, it should decree that she is entitled only to the route referred to therein. The trial court found with the defendants on all their contentions, concluding therefrom that plaintiff is not entitled to the right of way described in her complaint or to any other right of way than the one specifically described in the amendment, that she is the owner of the latter, that she is entitled to construct a roadway thereon but cannot in so doing disturb or change the surface of the land of the Claremont Hotel Company outside of the thirty-foot strip described, and that the hotel company may maintain gates, both at the old Ballard bridge and at the point where said way reaches the line of plaintiff's property. Judgment was given accordingly.

This is an appeal by plaintiff from such judgment.

The claim of plaintiff that the trial court was not warranted in authorizing the maintenance of any gate or gates on the

way established need not be considered in view of the written waiver filed by defendants consenting that the judgment may be modified by striking therefrom the provision relating thereto, and by inserting therein a provision to the effect that the way awarded is "an open way, unobstructed by gates."

Upon all other points made by plaintiff we are of the opinion that the conclusions of the learned trial judge were right. For a better understanding of the various claims it is necessary to make a brief statement of some of the undisputed facts.

The agreement for the sale of the thirteen-acre tract to Magee recited a consideration of $37,500, and was made October 12, 1905. The provision therein as to right of way was that "a permanent right of way is to be given to Maria V. Ballard, or successors, to enter her land immediately to the rear and east of above described land at or about the Ballard bridge on old Fish Ranch Road over Harwood Creek." It does not appear that there was then any knowledge on the part of plaintiff that it was contemplated using the granted premises for hotel purposes. The conveyance was made to Magee in pursuance of this agreement on November 10, 1905, containing the reservation as to right of way hereinbefore set forth, and on the same day Magee conveyed the property to Titus, acting for the hotel company. The forty-acre tract, of which the thirteen acres conveyed were known as the "front portion," was situated in the Berkeley hills, and was somewhat rectangular in shape. The front portion, which had for a long time been divided by a fence from the rear portion, had been used as a family residence, while the rear portion had practically been unused. Along the westerly and northerly sides of the front portion and the northerly side of the rear portion for about 117 feet ran a public highway known as the Fish Ranch Road, but on account of the steepness of the slope of the rear portion bordering on that road, a practical entrance could not be obtained directly from the road to such rear portion. The nearest practical point of entrance from the Fish Ranch Road was apparently the old Ballard bridge, thus rendering necessary the reservation of a right of way therefrom if access to the Fish Ranch Road was to be had. This road was an ordinary country road constructed over a hilly country, with a roadway, so far as we can make out from the testimony, much narrower

than thirty feet. Without anything apparently having. been previously said on either side as to the location of the reserved right of way, plaintiff in the latter part of the year 1906 instructed Prather to survey a line from the Ballard bridge to a point on her line near the southeasterly corner of the "front portion," and the result was the Prather location, a winding strip commencing at the bridge on the northerly line of such front portion and running in a general southeasterly direction through the easterly portion almost to the southeasterly corner of the hotel company's land, its length being about seven hundred and fifty feet. Upon being notified of such location defendants refused to consent thereto and expressed their willingness to allow a road commencing at the bridge and running nearly parallel with Harwood Creek through the northern portion of their land to the rear portion, a route substantially complying with the Huggins route subsequently surveyed, and practically adopted by the trial court. This route did not exceed three hundred feet in length. By reason of the character of the land included in and adjoining the same, it would cost considerable more to construct and maintain a road over the Huggins route reasonably available to the use of the rear portion than it would over the Prather route, but the trial court was amply warranted in finding that the Huggins route was a practically reasonable one and would constitute an accessible approach to plaintiff's land. On neither route would it be possible to construct a *roadway* thirty feet wide, without trespassing on land without the thirty-foot strip, the Huggins route giving .a roadway of 16 feet in its narrowest portion. There was nothing in the evidence to indicate that at the time of the conveyance the parties had in mind any particular contemplated use by plaintiff of the rear portion, such as the subdivision of the same for sale in building lots. The substance of the evidence in support of the findings to the effect that the Prather location would inflict irreparable injury on the hotel company, and impose an unreasonable burden upon its land was correctly set forth in the opinion of the district court of appeal in this case as follows:—

"It appears to be shown with reasonable clearness by the evidence that for the purpose of a tourist hotel the property conveyed by the appellant to Magee would be materially and

greatly deteriorated in value if the right of way insisted upon by plaintiff were granted. It is a matter of common knowledge that one of the main and most advantageous and attractive features of such a hotel are the grounds upon which it is situated, and that to disturb the beauty and artistic symmetry of such grounds by running through them a highway, over which the public would have the right to pass and repass, and at the same time practically dividing the grounds into two parts, and, in order to build such highway, necessitating the destruction of large ornamental and umbrageous trees constituting one of the essential attractions of the establishment, would result in materially diminishing the attractions of the hotel and thus greatly depreciating its value for the purposes for which it is intended. The evidence shows that the Prather road, or the route selected and located by the plaintiff, would cut diagonally through a grove of trees at the rear of the hotel. This grove, which consists of eucalyptus, Monterey pine and cypress trees, is of value to the hotel not only because of their great beauty and attractive effect upon the grounds of the hotel, but because they also serve as a windbreak. The plan of the hotel company is to build trails and paths, summer-houses, tea gardens and other like attractive features through and in the grove. Moreover, the evidence discloses that the road as designated by plaintiff would be within one hundred feet of the hotel, with which on the east side it would parallel, 'beginning at about the level of the second floor and rising to the level of the fourth floor' for a distance of some two or three hundred feet. Being so near the windows on that side of the hotel, it is obvious that the privacy of the rooms located on the east side of the building would be thus materially interfered with, and the rental value of such rooms most certainly lessened."

At the time of the commencement of this action the construction of such a tourist hotel to cost nearly one million dollars had already been commenced. It is clear that the Prather route was an unreasonable location if such a one as was reasonably adequate and within the contemplation of the parties could be located through the northerly portion more nearly parallel with Harwood Creek.

The lower court was fully warranted in concluding that plaintiff was limited under this reservation to a strip thirty

feet wide within which to construct her road, even though
the effect of such limitation was that the actual roadway would
be thereby reduced in width to sixteen feet. The words of
the reservation were "a right of way thirty feet in width."
These words did not necessarily imply a "road" or "roadway"
thirty feet in width. In fact the reasonable implication there-
from was the reservation for right-of-way purposes of a "strip
of land" to be thereafter located thirty feet wide. It is
doubtless true that plaintiff was entitled to have such strip
so located as to enable her to construct thereon a roadway
which was, under all the circumstances, of necessary or
convenient width, if such a location could possibly be made,
but it would appear unreasonable to construe a grant or
reservation of a mere right of way thirty feet wide as an
authorization for an exclusive and permanent appropriation
by the owner of the easement of a strip forty-four feet wide,
the latter appearing from the evidence to be the width neces-
sary to enable plaintiff to construct and maintain a roadway
thirty feet wide, and especially where the evidence was such as
to warrant the conclusion that such a roadway as could be con-
structed within such width of thirty feet, would, under all the
circumstances, be one of sufficient width. The very object of the
specification of width would appear to be to place without
the realm of controversy all questions as to the amount of
land the owner of the dominant estate might take and the
owner of the servient estate be compelled to give for the pur-
poses of the easement. A "right of way" is defined simply
as "the privilege which one person, or particular description
of persons, may have of passing over the land of another
in some particular line," (*Kripp* v. *Curtis*, 71 Cal. 62, 63,
[11 Pac. 879]), a mere privilege of passage over such land,
under the circumstances of this case, with the implied right,
of course, under such circumstances, to make such changes
in the surface of the land as are necessary to make it available
for travel in a convenient manner. Where the width of this
mere right of way is expressly specified, the owner may have
the absolute right to use to the limits of the specified width
even though the result be to give him a wider way than is
necessary (see 14 Cyc. 1202; *Tudor Ice Co.* v. *Cunningham*,
8 Allen, (Mass.) 139; *Dewire* v. *Hanley*, 79 Conn. 454, [65 Atl.
753].; *Herman* v. *Roberts*, 119 N. Y. 37, [16 Am. St. Rep.

800, 23 N. E. 442]), free of interference by the owner of the servient estate. But we have found no authority to the effect that such a grant or reservation, in the absence of language from which such an intent may be inferred, authorizes the appropriation of land lying beyond the specified width. In *Wheeler* v. *Wilder*, 61 N. H. 2, relied on by plaintiff as being exactly in point, the grant was of the right to cut a canal "said canal to be of sufficient width to carry the water, with the right to dig the same one rod and one fourth wide if needed." The right to dig a canal to the full width specified was thus in terms granted, and that grant carried with it whatever was necessary for its reasonable use and enjoyment, including what was found to be the reasonable necessity of throwing the excavated soil upon other land of the grantor and leaving it there. In *Thompson* v. *Uglow*, 4 Or. 369, the easement was one to convey a stream of water over land by ditch or water race. The principal question involved was whether one having such an easement may dig up the soil adjacent to the race for the purpose of repairing the banks in case the same repairs can be made by other but more expensive means. The contract by which the easement was created was not before the court, and the record on appeal was not in such condition as to enable the appellate court to ascertain whether the necessary repairs could be made without digging up the soil. The decision goes no further than to hold that the right to make necessary repairs in the case of such an easement is essential to the enjoyment of the thing granted and necessarily passes by the grant, and that, where the deed leaves the matter of repairs to be implied, the owner of the easement may make such repairs as are essential to enjoyment, even to the extent of taking and using other soil of the owner of the servient estate, each case to be "determined according to its own peculiar circumstances." Neither of these cases constitutes authority for the proposition that a "right of way" of the kind here involved limited by its terms to a certain width authorizes the appropriation to purposes of the way of a greater width. It may be conceded that the circumstances under which such a reservation was made may be such as to show that the term "right of way" of a designated width is intended to denote a roadway of that width, but here the circumstances under which the reservation was made are such as to fully

sustain a conclusion that the parties did not contemplate a thirty-foot roadway at all, and that the language was intended to mean what it in substance says, viz.: that a strip thirty feet wide was reserved for right-of-way purposes. We regard it as a very potent fact, in this connection, that it was access to the Fish Ranch Road that was sought by the reservation to be preserved. It was the Fish Ranch Road practically continued to her property that plaintiff apparently desired, and this road as we have seen, was a narrow, hilly, country road. It is not questioned that the so-called Huggins route will enable plaintiff to have a roadway within the thirty-foot limit that will be as wide as the roadway of the Fish Ranch Road. Giving full force to the provision of our statute, that "a reservation in any grant . . . is to be interpreted in favor of the grantor" (Civ. Code, sec. 1069), we are satisfied that the reservation here involved limits plaintiff's use of the servient tenement to a strip thirty feet wide.

It is settled  law that where an unlocated right of way is granted or reserved, the owner of the servient estate may in the first instance designate a reasonable way, and if he fails to do so, the owner of the dominant estate may designate it. (Jones on Easements, sec. 337; *Kripp* v. *Curtis,* 71 Cal. 62, 65, [11 Pac. 879] ; *Blum* v. *Weston,* 102 Cal. 362, 369, [41 Am. St. Rep. 188, 36 Pac. 778].) Findings sufficiently sustained by evidence establish that there was no such failure in this case as to entitle plaintiff to make the selection. But had she been so entitled, she would still have been required to select a route that was reasonable as to both parties in view of all the circumstances, one "that will not unreasonably interfere with the grantor in the enjoyment of his estate." (Jones on Easements, sec. 337.) The trial court was warranted in concluding that the route selected by plaintiff was unreasonable in view of all the circumstances. The case before us is simply one where the parties have been unable to agree upon a reasonable route, in which event the location may be determined in equity. (Jones on Easements, sec. 354; *Gardner* v. *Webster,* 64 N. H. 520, 522, [15 Atl. 144].)

We are satisfied that the decree does not limit the use of the way decreed to any particular person or persons. By it, as modified under the waiver of defendants as to gates, the way will be an open highway appurtenant to the land of

plaintiff, regardless of the manner in which it may hereafter·
be subdivided, and available for the use of all who may have·
occasion to go to or from such land.

It is earnestly urged, upon the theory that this is simply
an action to quiet plaintiff's title to a strip of land specifically·
described in the complaint, that, especially in the absence·
of any cross-complaint, the trial court was not warranted in·
locating and designating as plaintiff's right of way another
strip than that designated in the complaint, and that its judg-
ment could have been, at most, simply one adjudicating·
plaintiff to be without title as to the strip of land described
in her complaint as the right of way desired. We are of the
opinion that in making this contention learned counsel for··
plaintiff are mistaken as to the scope of the cause of action·
stated in their complaint. That is not conclusively determined
by the prayer of her complaint asking that plaintiff's title·
to the specifically described strip be granted. The allega-
tions of her complaint show that her action was, in fact, one·
in equity to have a right of way over defendants' land, alleged
to be reserved by her deed to Magee, but not located therein,
located and determined by a judicial decree, the owner of⁻
the servient estate refusing to recognize or permit such a
location as she deemed herself entitled to. Such in fact was
the only kind of action she could maintain under the circum-
stances alleged in her complaint. She could not be held to·
have actually acquired title as to any specific route by reason·
of her mere designation thereof in no way acquiesced in by
the owner of the servient estate and of which she never
acquired possession. If the defendants failed to designate any
reasonable route and refused to allow her to exercise any
rights under the reservation, which was the case made by
the facts alleged in the complaint, her only remedy was to·
apply to a court of equity to enforce her reservation by locat-
ing the way and decreeing her rights therein. In the action
thus instituted, the route selected by her, if not an unreason-
able route under all the circumstances, should doubtless be
awarded her, but any action based upon such facts as were
alleged is primarily one for the adjudication of the right
to a way and the location of the same by the court. Inci-
dentally the plaintiff, of course, seeks to have the route
selected by her designated by the court as the particular way

to which she is entitled, but failing in this she was still entitled under the allegations of her complaint to have the court adjudicate her right to a way and locate the same. The admissions of the answer and the evidence showed her to be entitled to such rights in the hotel company's land, and it would have been prejudicial error to have refused to decree those rights, for the effect thereof would probably have been to forever debar her from the assertion of any right under the reservation. The matters adjudicated were all within the issues made by complaint and answer, and no cross-complaint was necessary to authorize the court to designate for plaintiff such way as it might find to be reasonable in view of all the circumstances.

It cannot be held that the trial court erred in permitting to be filed the amendment specifically describing the right of way fixed by the judgment. As we have seen, there was no objection by plaintiff to such action on the part of the court. The filing was with the consent of plaintiff. Nor can it be held that the court erred in refusing to reopen the case on the request of plaintiff. The case had been very thoroughly tried on the issues as to the relative merits of the Prather and Huggins routes, and the trial court was warranted in concluding that there was no good reason for the taking of further evidence. It is claimed that the description in the amendment does not in all its details correspond with the route shown on the map in evidence known as the Huggins route, and as to which the evidence was given on the trial. It is claimed by defendants that it corresponded very closely with such Huggins route as shown on said map, and is substantially the same thing. We need not discuss this matter further in view of the fact that defendants consent in their brief that plaintiff may have the exact route shown on the map, if she so desires, and that the judgment may be modified accordingly.

There is no other matter requiring notice.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in accord with the old judgment except in the following respects, viz.: the provision relating to gates shall not be inserted, and in lieu thereof there shall be inserted a provision to the effect that the way awarded is an open and unobstructed way; and further, if plaintiff within thirty days after the filing of the

*remittitur* from this court so demands in writing filed· in the superior court, the description of the way awarded shall be . changed so that the same shall correspond in all respects to the Huggins route as shown on the map in evidence in this cause.

Shaw, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.