## BOSTON GROUP GOLD MIN. CO. v. BRITT et al.

(First Division.   Juneau.   September 21, 1916.)

### No. 1465-A

EASEMENTS ⬠42—RESERVATION OF RIGHT OF WAY.

> The defendant purchased land from plaintiff, and in the contract for conveyance it was agreed: "It is expressly provided, however, that in event of necessity that Boston Group Gold Mining Company shall have a right of way over the westerly part of the above-described tract to reach its mining property." On suit brought by plaintiff to prevent the defendant from obstructing a road existing across said tract, *held* the contract is not for any particular road, but for a right of way, the right to make a road. Before the transfer of the land the plaintiff owned both the land and the road thereon. It had no easement therein, but the jus disponendi thereof. After the transfer it had only the reserved right to build a road across the property when the necessity shall arise. No proof is made of the necessity, and the action is dismissed without prejudice.

W. W. Folsom, for plaintiff.
Hellenthal & Hellenthal, of Juneau, for defendants.

JENNINGS, District Judge.   The gravamen of the complaint as filed is that the defendant has obstructed a road of the plaintiff situate on plaintiff's land, to wit, on the Boston No. 2 lode mining claim, to plaintiff's damage in the sum of $500, and that he threatens to, and will, continue to obstruct said road. Wherefore damages of $500 for the injury already done and an injunction against further obstruction is asked.

The answer denies that plaintiff owns the land on which the road is situated, and for an affirmative defense alleges that the defendant is the owner and in possession of said land, and that he agreed to allow plaintiff a right of way, said agreement being by virtue of the fact that the plaintiff did on November 15, 1911, execute to defendant's grantor an instrument in writing, duly witnessed, by which, in settlement of "all controversy between the parties in regard to the land" on which the road in dispute is situated, the plaintiff agreed to convey to defendant said land upon the obtaining of a patent therefor—said instrument containing this provision:

---

⬠See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It is expressly provided, however, that in event of necessity that Boston Group Gold Mining Company shall have a right of way over the westerly part of the above-described tract to reach its mining property."

The reply denies that defendant is the owner and in possession of the land on which the road is situated, but does not deny the aforesaid agreement.

Such being the state of the pleadings, the case went to trial on said pleadings, without objection, notwithstanding the fact there is a clear "departure."

The evidence shows conclusively, among other things:

(1) A state of title equivalent to ownership by plaintiff of Boston Lode No. 2, and by defendant of the Britt lot described in the answer.

(2) Possession by defendant of said Britt lot. .

(3) The agreement aforesaid.

(4) That Britt is obstructing, on his own land, the road mentioned in the complaint, and will continue to obstruct that road.

It is obvious that on this evidence no relief could be granted under the original complaint, because that complaint is based on the position that plaintiff is the owner of the lot. It is only by amending the complaint to conform to the proof that the cause can be considered at all. Such a proceeding changes the action from one of pure tort for obstructing an actual existing road of plaintiff and on plaintiff's land, and for relief as asked for, into one to enjoin the defendant from denying plaintiff a right of passage, with damages for injury alleged to have been already committed.

The evidence has been introduced, the case has been heard, argued, and submitted, as if the complaint was based on the contract set up in the answer—in other words, as if the plaintiff had set up Britt's ownership of the Britt lot, and also the agreement for a right of way and the breach thereof, and were asking damages and injunction. Such being the case, the court will also so consider it.

The rights of the parties then depend upon the contract. This is a contract, not for any particular road, but for a right of way; i. e., a right to make a road. Before and at the time the contract was entered into, and immediately prior to the commencement of this suit, there was a road over the Britt lot—not a right of way merely, not an easement merely, but an actual road. The land on which said road was situated

belonged to plaintiff. Plaintiff could have no easement in its own land. It owned its own land and the road thereon, and had the jus disponendi thereof. If it disposes of the land, it disposes of that part of the road which is situated on the land, and of the right to pass over it, unless the road, or unless the right to pass over it, is reserved, or excepted, or covenanted for.

The language of the contract precludes the idea that the road as it actually existed was the thing to be preserved. Britt's grantor did not agree not to obstruct that road. He did not agree to keep it in repair or to build a new road. What he contracted to give, and all that he did contract to give, was a right of way; i. e., a right to make a road. A right of way and a road are two separate and distinct things. Chollar Potosi Mining Co. v. Kennedy, 3 Nev. 361, 93 Am. Dec. 409.

Now, this right of way, what was it to be a right of way to —a right of way for?

The contract says it was to be a right of way to reach plaintiff's mining property; not to reach any particular part of plaintiff's mining property; not to reach any "point of development." Once on its own property, through the westerly part of defendant's property, manifestly plaintiff must shift for itself. The evidence shows that plaintiff's mining property is situated adjacent to and immediately to the rear of the Britt and Torvinen lots, while the "point of development" is situated some 800 feet therefrom, and to the right of Britt's lot. A road or way from the front of Britt's lot, next to and paralleling Torvinen's line, will reach plaintiff's mining property in the shortest and most direct line. What equity, then, had plaintiff to insist that a road must be granted which will occupy more of Britt's property than is necessary to be occupied to reach the line of the mining property? What equity has plaintiff to insist that a right of way must be granted him to construct a road which will connect with some road already on plaintiff's land? That was not the contract.

Plaintiff affects to find this equity in the fact that, when the contract was entered into, there was already a road over the land afterwards deeded to Britt, which led on over plaintiff's land to the point of development. Even so; but it must be borne in mind that at that time there was no Britt land. It all belonged to plaintiff. If the contract had meant to reserve a right of passage over that particular road, the language

would not have been, "In event of necessity shall have a right of way over the westerly part to reach its mining property." Evidently all claim to use that road was abandoned; otherwise, the language used would have contained some reference to "existing ways." Gayetty v. Bethune, 14 Mass. 49, 7 Am. Dec. 191. Evidently at the time of the contract there was no necessity for a road over the Britt tract. The language is, "In event of necessity shall have a right of way." "In event of necessity" means "if there should be a necessity." Such language implies that there is no present necessity, but that a necessity might arise. It is language looking to the future. But it is said that, even after the contract, the plaintiff continued to use that road, and that its continued use is evidence that that was the roadway in contemplation. I do not think that follows. It is true as a general proposition of law that "an indefinite reservation of a right of way may be construed with reference to the acts of the parties in regard to it"; but such acts must be the acts of the "parties," not the act of one party only. Britt's grantor and Britt might have negatively permitted any use to be made of that road without impairing their rights, unless, knowing the use that was being made, they remained passive. Prescription in favor of plaintiff could only begin to run from November 15, 1911, for up to that time plaintiff owned the road, and user even for the prescriptive period after that time would not avail, unless it was user with the knowledge of the defendant's grantors. There is no evidence that Britt's grantors or Britt knew that any one was using the road after November 15, 1911. They may have known that the road was there—undoubtedly did; but, even so knowing, they were not confronted with the necessity of obstructing it at once, or of losing forever afterwards the right to obstruct it. I do not pass upon the question as to whether or not the public has a right of action, because the public is not in court; no one is here complaining but the plaintiff.

Again: "In the event of necessity" means "contingently." The words refer to the future; the expression means that if a necessity should arise, to meet which it should be necessary to pass over the westerly part of the Britt lot, plaintiff may do so without becoming a trespasser. No interest in the land is created. No permanent, perpetual, continuous easement is granted, but only the right to pass when necessary. If the ne-

cessity never arises, the right cannot be exercised. Bakeman v. Talbot, 31 N. Y. 366, 88 Am. Dec. 277.

The dimensions and nature of the passage for which a right is contracted will, of course, be determined by the nature of the necessity when that arises. If the necessity is for a foot passage only, a passage for four-horse teams could not well be insisted upon.

The court is asked to restrain Britt from obstructing a particular road. The road is on his land. He never agreed not to obstruct it. He had a right to obstruct it, and he is not liable in damages for so doing. The court, therefore, cannot enjoin him as prayed for in the complaint.

But it appears from the evidence that Britt is about to build a house, a substantial structure, a habitation, a dwelling, with concrete foundations, and that he is about to build it in such a location on his lot that, when once built, it will be impossible for plaintiff to construct a road; i. e., to enjoy his easement, his right of passage, over the westerly part of the lot, which the contract assures him if necessity arises, unless the house, when constructed, shall be so shifted or contracted as to allow this passage. This right of passage plaintiff is to have when the necessity arises. The contract says so. Of course, if Britt allows a right of way over the easterly part of his land, to plaintiff's mining ground, which is as convenient and practicable as a way over the westerly part, then there is no necessity for a way over the westerly part.

Easements are to be exercised reasonably, with a view to causing as little detriment as possible to the servient estate, and yet of leaving the practical and convenient enjoyment of the easement to the dominant estate.

If, therefore, there is now a necessity (and even though there be no present necessity, yet when there is a necessity), the plaintiff will be entitled to an injunction, preventive, or mandatory, or both, as the case may be. The right, as said before, arises when the necessity arises, and ceases when the necessity ceases.

Now, what necessity has been shown by the evidence? Certainly no necessity for the passage of wagons hauling machinery or bridge timbers, nor for the passage of wagons at all. It has not been shown that there is any work being carried on on the mining property. It is true one of the witnesses speaks of the workings of the Boston Group Gold Mining

Company, but his language is vague and unsatisfactory. There may have been a necessity at one time for a passage over the Britt lot of wagons laden with heavy machinery and timbers. It is possible that there may again arise a necessity for such things; but is there any present necessity for such passage? Is any mining work, or work of any character, at present being carried on on the plaintiff's holdings, and, if so, of what character is it? What witness testifies to it? Under such a clause the grantee could not well insist on a passageway suitable for the hauling of heavy machinery to operate a mine when no work is being carried on or in contemplation necessitating the hauling of heavy machinery. The grantee could not well insist upon a passageway suitable for the hauling of long bridge timbers, when there is no bridge work going on or contemplated, and no need for such timbers, and no intention of getting such timbers on the land.

Both sides to this controversy have asked me to inspect the premises. I did so. I found no mining operations being carried on. I found a small mill and shaft house; the road approaching the same overgrown with grass and weeds; the planking in decay; a narrow footbridge spanning Gold creek, beyond which is said stamp mill and shaft house—the whole having the aspect of what might once have been an enterprise in operation, but which was shut down. There was no appearance that it was a mere temporary shutting down either. There was no appearance of any contemplated resumption of operations; no one was about; no keeper in charge. On the contrary, the door of the building was padlocked, the windows boarded up, the structure unused and untenanted.

It appears from the evidence that one Pelligrini, after quitting the employ of plaintiff when it ceased to operate, continued to live in one of the houses as a tenant of plaintiff, and that wagons cannot now get up to his house to deliver coal or groceries, and that is referred to as showing necessity; but the contract is not to furnish a passage to reach Pelligrini's house, but only to reach plaintiff's mining ground. The distance from Britt's front to the mining claim is only 100 feet, and if Pelligrini's house were there, instead of 800 feet away, and if delivery teams can get within 100 feet of a house, and there is a foot passage over that 100 feet to the house, I cannot see how it can be considered a necessity for teams to get

to the house to deliver groceries or coal, which in this country is usually sacked and carried on the shoulder.

Britt's obligation is to allow a right of passage when the necessity arises. This passage provided for must, of course, be of such dimensions as the uses to which the land sought to be reached reasonably requires. Grafton v. Moir, 130 N. Y. 465, 29 N. E. 974, 27 Am. St. Rep. 533. He must allow this passage from the front of his land to the mining claim.

This, then, is the state of the case: "When necessity is shown" plaintiff will be entitled to the right of passage over the westerly part of Britt's lot from the front of said lot to the mining property in its rear.

No necessity appears at the present time. When it does arise, plaintiff can demand of Britt that he designate the locus of the right of way. If Britt does not then locate it conveniently and practically, having in view the terms of the contract, defendant may designate its locus. If either party is not satisfied with the designation made by the other, the court will on proper application make the designation. Ballard v. Titus, 157 Cal. 673, 110 Pac. 118. But the court cannot locate it until the necessity arises, and the court cannot locate it until asked so to do. Neither party has asked the court so to do.

The action will be dismissed without prejudice to the bringing of another action when the necessity arises and the parties fail to agree. I am aware that this decision decides nothing, except that the case is dismissed without prejudice, and that it leaves Britt in the position, if he builds his house at the point contemplated, of not knowing how soon he may be ordered to remove it, or shift it, so as to afford a reasonable right of way; but the contract itself and the state of the pleadings and proof are responsible for this state of affairs.