413 F.2d 265
 The INTERNATIONAL COMPANY, a partnership composed of David Salyer, Charles L. Golding and Henry Dye, and Title Insurance and Trust Company, San Bernardino County, California, Appellants,
v.
William G. FOWLER, as Bankruptcy Trustee of Guaranty Trust Deed Corporation, Appellee.
 No. 21593.
 United States Court of Appeals Ninth Circuit.
 January 6, 1969.
 Rehearing Denied August 28, 1969.
 
 Burke Mathes (argued) Los Angeles, Cal., for appellants.
 Welburn Mayock (argued) Los Angeles, Cal., for appellee.
 Before CHAMBERS and BROWNING, Circuit Judges, and McNICHOLS*, District Judge.
 CHAMBERS, Circuit Judge:
 
 
 1
 We deal here with who gets a small five thousand dollar deposit on a million dollar land transaction which was never completed, but died in escrow with the Title Insurance and Trust Company, San Bernardino.
 
 
 2
 Fowler is Guaranty's Chapter X bankruptcy trustee operating under authority of a district court not within the Ninth Circuit. Here the issue started in ancillary proceedings brought by the trustee before a Los Angeles referee in bankruptcy acting as a special master of the Central District of California. The referee recommended a turnover order in favor of Trustee Fowler for the five thousand dollars. This was adopted by a judge of the Central District of California. This appeal followed.
 
 
 3
 The transaction began March 9, 1964, with a deposit receipt on a broker's form. This was signed by the International Company and by the attorney for the trustee. This was at least partially superseded by an "Escrow Instructions" contract signed by the parties dated April 8, 1964. A closing date of on or before October 8, 1964, was specified. (We find no real inconsistencies between the two agreements.)
 
 
 4
 In the escrow agreement we note the following clauses:
 
 
 5
 "[The Title Insurance Company shall be ready to issue a title insurance policy showing title vested in the International Company] subject only to: (1) all of the taxes for the fiscal year 1964-1965, now a lien, but not yet payable. (2) Covenants, conditions, restrictions and public utility easements of record, provided said easements do not exceed six feet in width and are along the rear and one side line of said land."
 
 
 6
 * * * * * *
 
 
 7
 "This escrow is contingent upon buyers approval, in writing, of the preliminary title report as furnished by the Title Insurance and Trust Company. Said approval in writing is to be deposited with Title Insurance and Trust Company prior to the close of escrow."
 
 
 8
 * * * * * *
 
 
 9
 "Time is of the essence of these instructions. If this escrow is not in condition to close by October 8, 1964, any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property; but if none have complied, no demand for return thereof shall be recognized until five days after the escrow holder shall have mailed copies of such demand to all other parties at their respective addresses shown in the escrow instructions. If no such demand is made, close this escrow as soon as possible.
 
 
 10
 "Any amendment of or supplement to any instructions must be in writing."
 
 In the deposit receipt we find:
 
 11
 "(1) If Buyer fails to pay the balance of said purchase price, or to complete said purchase as herein provided, the amounts paid hereunder may be retained by the seller, at his option, as consideration for the execution of this agreement."
 
 
 12
 The preliminary title report was supplied on June 5, 1964, almost two months after the escrow instructions were signed. In it as exceptions were listed several old floating easements for pipes and poles, but mainly for domestic and irrigation pipes. Certainly the easements were not fastened down to six feet from the border lines. As used prior to 1964, it would appear the easements would present no problem to a subdivider such as International. We are told and we are convinced a California equity court would restrict the easements to narrow lines. See Ballard v. Titus, 157 Cal. 673, 110 P. 118. But no request that the seller take such action was ever made. The buyers on October 7, 1964, the last day before the performance date, notified the Title Insurance Company that they could not accept the title because of the floating easements. They included in their letter a demand for the return of the $5,000 on deposit. On October 12, 1964, the trustee demanded the same money as a forfeit.
 
 
 13
 From June to October, there is a conflict in the evidence as to whether the International partners were orally objecting to the title. We do not believe this point was ever resolved by the referee as master. (And, of course, the trustee says the trouble was that the purchasers couldn't finance the transaction they had signed up for. If we were not judges, we would know this was the truth.)
 
 
 14
 We can see a number of issues that might have been created or raised before the special master. We suggest:
 
 
 15
 1. Suppose the seller had seasonably asked in writing for the buyers' position (in writing) on the title report.
 
 
 16
 2. Suppose the seller had asked on October 8, 1964, or soon thereafter for time to "fix" the easements and remove them from their floating state.
 
 
 17
 3. Suppose the seller had pleaded an estoppel on the part of the buyers and supported it with evidence.
 
 
 18
 4. Suppose the seller had pleaded some sort of an oral waiver.
 
 
 19
 5. Suppose the title company had been willing to omit the easements as exceptions. (But it did so list them.)
 
 
 20
 But as it was, all we can see to the case is that by their terms the easements shown on the report were broader than (and not restricted to) the outside six feet as provided in the escrow instructions. Practically the easements may have amounted to little, but they were there in their wild state. Thus, we are of the view that absent any request for the opportunity to clear them up the buyers could reject the title. Thus, the buyers should have their money back.
 
 
 21
 Something more important lurks here than the peanut shells of this transaction before us. Obviously the purchasers, who represented only themselves, were taking a little gamble on a margin deposit of one half of one per cent. The trustee was a fiduciary. Why was he fooling around with such a deal? And, what kind of legal work went on in behalf of the trustee when the purchasers were not required by the contract to state any title objections promptly?
 
 
 22
 The turnover order is reversed. We hold International should have the money.
 
 
 
 Notes:
 
 
 *
 The Honorable Ray McNichols, United States District Judge for the District of Idaho