[No. 12771. In Bank. — March 30, 1889.]

## JAMES D. DURFEE, RESPONDENT, *v.* RICHARD GARVEY, APPELLANT.

EASEMENT — REPAIR OF. — Where an easement exists over the land of another, the duty of keeping it in repair rests upon its owner, and when repairs are necessary, he may enter upon the servient tenement to make them.

ID. — EASEMENT TO MAINTAIN DITCH — PASTURING STOCK ON SERVIENT TENEMENT — OBLIGATION OF OWNER TO KEEP IN REPAIR. — The owner of a servient tenement, over which there is an easement to maintain a water ditch, has a right to use his land for the pasturage of stock in the ordinary manner, and is under no obligation to fence in the ditch or cover it over so that his stock cannot tread it down, nor to keep it clear and unobstructed, so that water will continuously flow through it.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Smith & Clark, Lucien Shaw,* and *James M. Damron,* for Appellant.

The defendant had a right to use his land for the ordinary purposes of pasturage (Shearman and Redfield on Negligence, sec. 496; *Underwood* v. *Carney,* 55 Mass. 286, 292; *O'Linda* v. *Lathrop,* 38 Mass. 297; Washburn on Easements, 252; *Radcliffe* v. *Mayor,* 4 N. Y. 200, 203; 53 Am. Dec. 317); and was under no obligations to keep the ditch in repair. (*Doane* v. *Badger,* 12 Mass. 70; *Prescott* v. *Williams,* 46 Mass. 435; 39 Am. Dec. 688.)

*Bicknell & White,* and *Barclay, Wilson & Reddick,* for Respondent.

BELCHER, C. C. — The plaintiff and defendant are owners of adjacent tracts of land in Los Angeles County, the defendant's land lying to the southwest of the plaintiff's. Plaintiff's land is nearly level, and a large portion of it is swampy, and unfit for cultivation without artificial drainage. It has a slight inclination toward the southwest, and commencing on defendant's land, about six or seven hundred yards from plaintiff's line, is a well-defined channel, called the Arroyo Honda, which leads off to the southwest. From plaintiff's line to this arroyo was a slight depression, through which, about the year 1870, the then owner of a part of plaintiff's land, with the consent of the then owner of defendant's land, constructed a ditch some three feet deep, and three feet wide at the top. Leading to this ditch other ditches were constructed around and through plaintiff's land, and when all of these ditches were clear and unobstructed, the land was drained so that it could be cultivated, and good crops raised upon it. Grasses and weeds grew up quickly in the ditch leading to the arroyo, and up to 1882 plaintiff was accustomed to clean out this ditch at least twice

every year, no one objecting to his doing so. Prior to 1882 a part of defendant's land was cultivated, but in that year he ceased to cultivate it, and has since used it only for pasturing stock. He has kept on it horses, mules, and cattle, and these animals, by feeding along the ditch, and frequently passing over it, have broken in its sides, and have thereby filled it up and obstructed the flow of water through it. This obstruction interfered with the drainage of plaintiff's land, and prevented his cultivating twenty to twenty-five acres of it, on which he could otherwise have raised good crops.

In 1885, and again in 1886, defendant's cattle broke into plaintiff's inclosure and damaged his growing crops.

Plaintiff brought this action to recover damages for the alleged wrongs above recited, and in the first count of his complaint he asked damages in the sum of four hundred dollars, and in the second in the sum of six hundred dollars.

Under the instructions of the court, the jury found that the plaintiff was damaged by the obstruction of his drainage in the sum of $150, and by the trespasses of defendant's cattle in the sum of $210, and for these aggregate sums judgment was entered. The defendant moved for a new trial, and has appealed from the judgment and order denying his motion.

1. The theory of plaintiff, developed at the trial, in reference to his first cause of action, was that he had acquired a prescriptive right to the use of the ditch leading from his lower line to the arroyo, and that defendant had no right to make any use of his land which would cause an obstruction of the ditch, and that if he did so, he must keep it cleared out, or be liable for any damages caused by the obstruction. On the other hand, the theory of defendant was that plaintiff had acquired no prescriptive right to the use of the ditch, and that if he had, defendant had a right to use his land for any legitimate and ordinary purpose, and if while so using it the ditch

was injured or obstructed, the burden was upon the plaintiff to remove the obstructions and keep it in repair.

In accordance with plaintiff's theory and at his request, the court instructed the jury as follows: —

" If you believe from the evidence that there was no natural channel over the lands of the defendant, or the lands occupied by him, at the place alleged in the complaint, except on the southwesterly side of the lower Garvey tract, but believe from the evidence that there was a natural depression there, through which the plaintiff constructed a ditch for the purpose of carrying off the water from his own land, and did carry off said water through the same, into a natural channel on defendant's land, and has used the same for such purpose openly, peaceably, continuously, notoriously, uninterruptedly, and adversely to the defendant and his predecessors for more than five years before the commencement of this action, and before the obstructions alleged in said complaint, you are instructed that the plaintiff thereby acquired a right to the use of such ditch, and the defendant is liable for any damages sustained by the plaintiff, for the obstruction by defendant, or stock under his control, of said water-way."

And the court refused to give to the jury the following instruction asked by defendant: —

" Even where one has by adverse use acquired a right to use a ditch over the land of another to carry water off of his own land, he is bound to keep such ditch in repair himself. He has no right to call upon the land-owner to make any repairs, unless such repairs are made necessary by the negligence of the land-owner. It is not negligence for the land-owner to use his land in the same manner and for the same purposes as similar land in the same vicinity is ordinarily used, and for which it is naturally fitted. Any repairs made necessary by such ordinary use must be made by the ditch-owner, and not

by the land-owner, and the land-owner is not liable for any damages caused by such ordinary use."

The question, then, presented for decision on this branch of the case, conceding that plaintiff had acquired an irrevocable right to have his ditch maintained over defendant's land, is, To what extent does that right interfere with and limit defendant's right to use his land? Must defendant, if he would use his land for the pasturage of stock, fence in the ditch or cover it over so that the stock cannot tread down its sides? And if he so uses it, is the burden cast upon him to keep the ditch clear and unobstructed, so that the water will continuously flow through it?

It must be admitted that the use of land for pasturage is a common and legitimate use of it, and there is no pretense that defendant did not exercise ordinary care over his stock. Plaintiff was a witness for himself, and testified: —

"I suppose that Garvey pastures the cattle in that field as people ordinarily pasture their cattle; he has a portion of the field fenced to the southwest, and I suppose he turns his cattle in there and lets them stay there, confined by the fence; I can't say that he has a herder; he has a man there to look after them; I don't know that he herds them; in order to keep the cattle from getting into that ditch, he would have to protect it by fence or build bridges across the ditch, where those cattle go from one side to the other; building bridges would prevent them from tramping the ditch to a great extent; the cattle feed along and up and down the ditch, and cave it in; the soil is very soft; but the most serious damage is done in places where they cross; he would have to fence the ditch or make a blind ditch, the same as I do,—cover it over in order to protect it from the cattle."

Now, if the plaintiff's theory be correct, the defendant cannot use his land as a pasture, though that may be the best and perhaps only profitable use he can make of it,

unless he employs men to patrol the ditch and
cattle away from it, or goes to the expense of fenc
in or covering it with bridges. It does not seem to
that the plaintiff's easement on the land can impose any
such burden as that on the defendant. The general rule
is, that any man may use his own land in his own way,
provided he does not use it negligently, so as to injure
his neighbor. And the rule is, also, that where one man
has an easement over the land of another, the duty of
keeping the easement in repair rests upon its owner, and
when repairs are necessary, he may enter on the servient
tenement to make them. (Goddard on Easements, 285;
Gale and Whatley on Easements, 215; *Prescott* v. *Williams*,
5 Met. 435; 39 Am. Dec. 688.)

It does not appear that plaintiff was ever denied the
privilege of making any repairs upon his ditch, and it
would be going to an extreme and unwarranted length,
as it seems to us, to hold that in a case like this defend-
ant is made ⸳ble. In our opinion, the court erred in
giving the ⸳⸳on above quoted for plaintiff, and in
refusing t at modification, that asked by de-
fendant.

2. As ⸳d cause of action, we see no error in
the ruli ourt. There was testimony to sustain
the ve⁊ ⸳e judgment to the extent of $210 was
prope᾽

W⸳ ⸳dgment and order be reversed,
and for a new trial, unless the plain-
tiff shall, days after the going down of the
*remittitur*, file ⸳ ourt below a release of $150, and
his costs in that cou⸳᾽, and if he does file such release,
that the judgment and order stand affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing
opinion, the judgment and order are reversed, and the

manded for a new trial, unless the plaintiff shall, within thirty days after the going down of the *remittitur*, file in the court below a release of $150, and his costs in that court, and if he does file such release, that the judgment and order stand affirmed.