[L. A. No. 16759.   In Bank.—March 8, 1941.]

CITY OF PASADENA (a Municipal Corporation), Appellant, v. CALIFORNIA–MICHIGAN LAND AND WATER COMPANY (a Corporation), Respondent.

Harold P. Huls, City Attorney, and Thomas W. LeSage, Deputy City Attorney, for Appellant.

Goodspeed, McGuire, Harris and Pfaff for Respondent.

GIBSON, C. J.—This is an action for injunction and damages based on the defendant's alleged past and threatened future invasion of certain easements owned by the plaintiff. The case was tried by the court sitting without a jury, and from a judgment entered for the defendant the plaintiff prosecutes this appeal.

The parties are competing vendors of water service in an unincorporated area situated between the cities of Arcadia and Pasadena. The defendant, under claim of right and with the admitted permission of the servient owners, installed water mains and service connections in certain five-foot easements theretofore granted to the plaintiff and partly occupied by its water mains and connections. This action was commenced by the plaintiff on the theory that the owners of the servient tenements had no power to grant easements similar to plaintiff's in the same five-foot strip of land to the defendant company, a competing distributor of water service. Plaintiff's contention was that it had a right to occupy the

five-foot strip completely if the necessity arose, and that the defendant's installation substantially interfered both with plaintiff's present partial occupation of the land and with its possible future use of the land for its pipes and connections. The trial court found against the plaintiff and for the defendant upon conflicting evidence. In this appeal plaintiff contends primarily that the easement granted to the defendant was an unreasonable interference with its prior easement as a matter of law. It is asserted that there was no need to resort to evidence of the surrounding facts and circumstances, and that the court should have found for the plaintiff upon the ground that the defendant's mains interfere in law with the easement previously granted to the city, entirely apart from the question of physical interference upon which the trial court found against plaintiff. There is also a contention that the findings of the trial court are not supported by the evidence. We find ample evidence, however, to sustain the findings. We shall confine our opinion, therefore, to a consideration of the appellant's primary contention, that the easements granted to the defendant interfered with its prior easements as a matter of law.

■ The easements involved in the present case are described as follows in the instrument creating them: "Easements for the purpose of installing and maintaining water mains and connections thereto . . . all of said easements being five feet in width, to-wit: a. In lots 1 to 12, both inclusive, along the south line thereof . . . ". This language eliminates at once the suggestion that appellant's easement was a so-called "exclusive easement". Under section 806 of the Civil Code "the extent of a servitude is determined by the terms of the grant . . . ", and there is no language in this grant which indicates any intention to make the easement held by the City of Pasadena an exclusive one. Indeed, appellant does not make a serious claim that there was an intention to make this an exclusive easement; and any such intention would seem clearly contrary to the admitted facts, since prior easements in the same land were in effect at the time when appellant's easements were granted. Furthermore, an "exclusive easement" is an unusual interest in land; it has been said to amount almost to a conveyance of the fee. (2 Thompson, Real Property [1939], sec. 578; Jones, Easements, sec. 378, p. 302.) No intention to convey such a com-

plete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention. (See *Reiver* v. *Voshell*, 18 Del. Ch. 260, 264 [158 Atl. 366]; Jones, *supra*, sec. 379, p. 303.)

The determination of this appeal turns upon the rights which the owner of the servient tenement retains in the land over which he has granted an easement for the laying of water pipes. ■ It is established that the right to lay underground pipes over the land of another is an easement and is governed generally by the rules of law which govern ordinary easements of way. (*Winslow* v. *City of Vallejo*, 148 Cal. 723 [84 Pac. 191, 113 Am. St. Rep. 349, 7 Ann. Cas. 851, 5 L. R. A. (N. S.) 851]; *Patterson* v. *Chambers' Power Co.*, 81 Or. 328, 348 [159 Pac. 568]; Weil, Water Rights in the Western States (3d ed.), sec. 458 et seq.; 17 Am. Jur. 983, 1002.) ■ Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. (*Hoyt* v. *Hart*, 149 Cal. 722 [87 Pac. 569]; *Durfee* v. *Garvey*, 78 Cal. 546 [21 Pac. 302]; *Dierssen* v. *McCormack*, 28 Cal. App. (2d) 164 [82 Pac. (2d) 212]; *Perley* v. *Cambridge*, 220 Mass. 507, 513 [108 N. E. 494, L. R. A. 1915E, 432]; 3 Tiffany, Real Property (3d ed. 1939), sec. 811.) It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains. (Jones, Easements, sec. 391 et seq., p. 313.) Furthermore, since he retains the right to use the land reasonably himself, he retains also the power to transfer these rights to third persons. (*Galletly* v. *Bockius*, 1 Cal. App. 724, 727 [82 Pac. 1109]; *Hoyt* v. *Hart*, *supra*, p. 728; 3 Tiffany, *supra*, sec. 811; 17 Am. Jur. 994, 995.) Thus, in the instant case, the right of the defendant to use the particular land in controversy is derived from the owner of the servient tenements, and whether it is a permissible use is to be determined by whether the owner of the servient tenements could have used the land in that manner.

■ Whether a particular use of the land by the servient owner, or by someone acting with his authorization, is an unreasonable interference is a question of fact for the jury.

(See *Frank* v. *Benesch,* 74 Md. 58, 61 [21 Atl. 550, 28 Am. St. Rep. 237] ; *Rowell* v. *Doggett,* 143 Mass. 483, 488 [10 N. E. 182] ; *Bakeman* v. *Talbot,* 31 N. Y. 366, 370 [88 Am. Dec. 275] ; Jones, *supra,* sec. 394, p. 315; 2 Thompson, *supra,* sec. 584; 17 Am. Jur. 994, 995, 1008; 15 L. R. A. (N. S.) 293.) In the present case, the trial court found that there was no such unreasonable interference, and this finding based upon conflicting evidence would ordinarily be conclusive.

Appellant urges the application of a different rule to the instant case upon the following grounds: That these easements are created by grant, and the language of the grant is so clear and definite that a court as a matter of law can define the relative rights of the parties from the instrument alone, without resorting to an examination of the surrounding facts and circumstances. This is said to be so because this is an easement of defined width and location, the theory being that where the easement has a defined width, the easement holder has the right to occupy it to the full width if it ever desires to do so. Therefore, it is asserted, any use of the strip of land for laying other water pipes should be held to be unreasonable interference as a matter of law.

Appellant relies upon cases which hold that a surface right of way of defined width gives the easement holder the absolute right to occupy the surface to that width whenever he chooses. These cases depend upon the theory that the easement granted is completely and clearly defined because the width and location of the right of way are specified in the grant. (See, for example, *Ballard* v. *Titus,* 157 Cal. 673 [110 Pac. 118] ; *Herman* v. *Roberts,* 119 N. Y. 37 [23 N. E. 442, 16 Am. St. Rep. 800, 7 L. R. A. 226].) They do not necessarily require a similar conclusion where the easement is for the limited purpose of laying underground water pipes to serve the surrounding property with water for domestic purposes. There is a clear distinction in purpose between a right of way over the surface of the land to be used by moving vehicles and an easement for the laying of water mains in a relatively fixed and permanent position. In the case of an easement for laying underground water pipes there are important factors to be considered in addition to the width and location of the easement. These include, for example, the number and size of the pipes, the right to shift the pipes around at will, and the depth at which the pipes

are to be laid. To state the point more generally, with such an easement the extent of the burden which the parties intend to impose upon the servient tenement is not definitely fixed merely by a specification of width and location. Indeed, even with surface rights of way, a specification of width and location does not always determine the extent of the burden imposed upon the servient land. (See *Johnson* v. *Kinnicutt*, 56 Mass. (2 Cush.) 153, 157; *Smith & Sons Carpet Co.* v. *Ball*, 143 App. Div. 83 [127 N. Y. Supp. 974].)

Appellant's position does not take into consideration the difference between the *burden* which the easement imposes upon the servient land and the *location* at which the burden is to be imposed. In *Winslow* v. *Vallejo, supra,* a case which is strongly relied upon by appellant, the court holds that where the grant is indefinite the court may consider additional factors in determining the extent of the burden intended to be imposed upon the land. At page 725 the court says: "But the conveyance is general in its terms and affords no basis for determining the number of the pipes, their size, or their exact location." It is here recognized that there are factors other than mere location to be considered, and that the extent of the burden is not determined merely by fixing the location of such an easement. ■ It is, of course, possible to draft an instrument which would fully define both the location and the burden of the easement, or which would make the easement exclusive. But the very general language used in the instrument under consideration here cannot be given any such effect. Considering the fact that these easements were granted for the limited purpose of securing domestic water service for the individual owners in this real estate subdivision and that no indication appears that the parties intended to protect the city against competition, we are unable to find any intent, either expressed or implied, that the owners were never to grant similar easements to anyone else. Hence, the mere granting of the second easement to the defendant did not interfere with appellant's prior easement as a matter of law. Whether the particular use under a second easement amounts to an unreasonable interference is, as we have heretofore pointed out, a question of fact, and the finding, made upon conflicting evidence, that defendant's use of its easement was not such an unreasonable

interference is conclusive upon the question so far as this appeal is concerned.

We do not wish to be understood, however, as limiting the rights granted to the City of Pasadena under its easements which were properly found to be prior and paramount to those of the defendant. The rule is established that the grant of an unrestricted easement, not specifically defined as to the burden imposed upon the servient land, entitles the easement holder to a use limited only by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted. (*Murphy Chair Co.* v. *American Radiator Co.*, 172 Mich. 14, 28 [137 N. W. 791]; *Chapman* v. *Newmarket Mfg. Co.*, 74 N. H. 424, 425 [68 Atl. 868]; *Dalton* v. *Levy*, 258 N. Y. 161, 167 [179 N. E. 371]; *Fendall* v. *Miller*, 99 Or. 610, 615 [196 Pac. 381]; see 15 L. R. A. (N. S.) 292; 2 Thompson, *supra*, sec. 572, p. 175; 3 Tiffany, *supra*, sec. 803, p. 323; 17 Am. Jur. 994, 996.) The language of the easements here involved does not sufficiently define the burden intended to be imposed so that defendant's easement can be termed an unreasonable interference as a matter of law, but neither does it restrict the right granted to the City of Pasadena to make the fullest necessary use of the five foot strip.

It is possible that the city may, at some future time, be faced with the necessity of expanding or changing its present system, and on its behalf it is asserted that the presence of defendant's pipes may seriously hamper the reasonable use of the city's prior easement under such circumstances. But if, in the reasonable use of its prior easement, the city requires the space occupied by the pipes of the defendant, its paramount right must prevail. In *Colegrove Water Co.* v. *Hollywood*, 151 Cal. 425 [90 Pac. 1053, 13 L. R. A. (N. S.) 904], plaintiff sought to make use of the servient tenement for laying water pipes despite the fact that an easement for highway purposes had already been granted to the defendant municipality. The court permitted this after a finding that the water pipes would not interfere with the use then being made of the highway easement by the city and added (p. 429): " . . . but the municipality may, and frequently does, occupy the soil beneath the surface for the accommodation of sewers, gas and water pipes, electric wires, and conduits for railroads. Where the city undertakes to occupy

the space above or below the surface of the street for any purpose within the scope of the public uses to which highways may be put, the use by the owner of the fee must yield to the public use." Until a point of unreconcilable conflict is reached, however, such a concurrent use of the land for similar purposes as is illustrated here should be governed by principles permitting an equitable adjustment of the conflicting interests. The respective rights of the two parties are not absolute, but must be construed to permit a due and reasonable enjoyment of both interests so long as that is possible. (*Murphy Chair Co.* v. *Radiator Co., supra; Bakeman* v. *Talbot,* 31 N. Y. 366, 369 [88 Am. Dec. 275] ; *Pomeroy* v. *Salt Co.,* 37 Ohio St. 520, 524; *Minto* v. *Salem Water etc. Co.,* 120 Or. 202, 212 [250 Pac. 722] ; 3 Tiffany, *supra,* sec. 811, p. 355; 17 Am. Jur., 993.)

In *Murphy Chair Co.* v. *Radiator Co., supra,* successive rights of way in the same land were involved and the court held that both easements could be used simultaneously under the existing facts, but indicated that the subsequent grant must be considered subordinate if it should ever interfere with the reasonable use of the prior easement. In *Pomeroy* v. *Salt Co., supra,* p. 524, the court held that the holder of an underground easement for the purpose of mining coal could not object to the placing of a second tunnel which would intersect his and would cross it at the same level. The court was clearly of the opinion that the prior easement was paramount but said that the second tunnel would not interfere substantially with the first easement under the existing facts. The proper rule is indicated by the language of the court in *Bakeman* v. *Talbot, supra,* p. 369, in which a conflict arose between the use by the holder of the easement and the use by the landowner. The court said, ''The defendant [landowner], certainly, has no right to preclude the plaintiff [easement holder] from availing himself of the right of passage, or to render the exercise of that right unusually or unreasonably difficult or burdensome. I think, he is not shown to have done so. . . . There is nothing inconsistent in holding, that the present arrangements are suitable and sufficient, under existing circumstances; and after these circumstances have changed, and the question shall arise, as to what shall then be proper, to determine that a passage perpetually open or a system of gates better adapted to such increased

use . . . shall be required of the defendant. It would not be right, at this time . . . to furnish facilities for a state of affairs which may never arise, or which may not arise until some remote period."

Under the present facts no basis is shown for the relief sought. Whether a different conclusion may be required by changed circumstances in the future cannot now be determined with certainty, and need not therefore be decided.

The judgment is affirmed.

Traynor, J., Curtis, J., and Edmonds, J., concurred.

SHENK, J., Dissenting.—I dissent.

Plaintiff City of Pasadena and defendant California-Michigan Land and Water Company are rival vendors of water service in an unincorporated area situated between the cities of Arcadia and Pasadena. A controversy arose between them about April, 1937, when defendant, acting under a claim of right, installed water mains and service connections in certain five-foot easements already occupied by the water mains and connections of plaintiff. In the month of June plaintiff filed the present action for injunction and damages, seeking relief from the alleged past and threatened future invasion of its easement rights by defendant. Trial of the cause resulted in entry of a judgment for defendant, from which plaintiff has appealed.

The easements involved are four in number, one paralleling the north side and one the south side of Arcadia Avenue, and one the north and one the south side of Fairview Avenue. These avenues lie within tract 3747 in the unincorporated territory, and are bounded on the west by Rosemead Boulevard and on the east by the Arcadia city limits. The A. B. Chapman estate was the original owner of the entire territory and had its own irrigation system. During the years 1920–1922, it subdivided Tract 3747, and put water mains and service connections along the length of Arcadia and Fairview Avenues for distances of 1581 and 1666 feet, respectively. On June 30, 1931, it conveyed a number of parcels of property to the city, together with its water system. Easement rights in the area traversed by the water pipes running parallel to the two avenues were expressly granted to the city by language in the deed as follows:

"Easements for the purpose of installing and maintaining water mains and connections thereto in the Lots hereinafter described in Tract No. 3747 . . . and located on such lots as hereinafter set out (the 51 lots bordering the two avenues); *all of said easements being five feet in width,* to wit: (description of property). . . . "

The deed further recited that the properties were conveyed subject to certain prior easements, one of which was an easement to defendant "for pipe line purposes over the east six feet" of the property adjacent to its junction with the Arcadia city limits.

The city continued, after its purchase, to maintain and use the mains, meters, and service connections installed by its grantor, and at the time the present controversy arose it was serving about 24 consumers on Arcadia Avenue. Its charter empowered it to engage in this activity without the city limits. (Pasadena Charter, art. I, sec. 2, subd. 20, Stats. 1933, p. 2757; see also Constitution, art. XI, sec. 19.)

Defendant company was also in the business of selling water and since 1913 had operated under supervision of the railroad commission in the general area of the unincorporated territory wherein the property here involved is located. As a part of its distribution system defendant maintained a water main along Rosemead Boulevard and also one bordering the westerly boundary of the Arcadia city limits. The latter main, at points of intersection at right angles with the city's Fairview and Arcadia Avenue mains, traversed the six-foot prior easement of defendant described in the city's deed as aforesaid. It is conceded that for many years prior to the city's grant, defendant was in a position to serve consumers along Fairview and Arcadia Avenues, but that it made no effort to reach them until about the year 1937, when growth of the area was sufficient to invite competition.

In December, 1936, defendant procured from each lot owner along Arcadia Avenue between Rosemead Boulevard and the Arcadia city limits a written license or grant for water service which purported to convey to it an easement practically identical with the easement already owned by the city, to wit:

"Forever, subject and in subordination to any prior right of any other public utility, the right to lay, maintain, repair, renew and enlarge, as necessary or convenient, such water mains, gates, service connections, meters and water distribu-

tion equipment as may hereafter from time to time be found necessary or convenient, in connection with said water utility service, along and across the five feet of the said respective parcels of the undersigned grantors, and each of them, next adjoining any public highway as may exist from time to time. . . . "

During the week of April 13th to 20th, 1937, defendant installed mains in the north and south five-foot strips paralleling Arcadia Avenue, together with meter boxes and service pipes. It then commenced to supply water to all of the twenty-four consumers on the avenue except two who continued to use the city's service.

This situation precipitated the filing of the present action. The amended complaint contained three counts. The first count alleged that defendant's installation of mains in the property strips along Arcadia Avenue was without right and interfered with the city's present and planned future enjoyment of its easements; and that, if not enjoined, the presence and continued use of said mains by defendant would ripen into a right under the doctrine of intervening public interest, to the city's irreparable injury. The second count alleged similar facts as to the Fairview Avenue easements, except that the injury there was of a threatened nature, as defendant had not actually installed mains in those easements. According to the third count, defendant's acts had caused a $3,000 depreciation in the value of the city's easements. The prayer of the pleading was that defendant be enjoined from installing or maintaining water mains and connections in plaintiff's easements, that it be compelled by mandatory order to remove those already installed, and that it pay $3,000 damages, together with costs of suit. Defendant joined issue by answer, denying among other things that the city had ever possessed or enjoyed any right to exclusive use of the easements.

It was undisputed on the trial that at numerous points along Arcadia Avenue, defendant's main approached to within about one foot of the city's main, and that such proximity could not fail to inconvenience the city to some degree in its maintenance, use, repair, replacement or future enlargement or relocation of main and pipes. Defendant claimed, however, that its interference was not so substantial or unreasonable as to entitle the city to relief, and there

was evidence both for and against this claim. The conflict of proof was resolved by the trial court in favor of defendant. It found that neither the terms of the city's grant, nor the manner of its use, established any exclusive right in the easements; that defendant's installation of mains along Arcadia Avenue did not substantially or unreasonably interfere with any present or projected future enjoyment of the easements by the city, nor would the city be injured by a similar use along Fairview Avenue; and that it would be inequitable to defendant and detrimental to the public good and welfare to compel it to remove its installation.

The judgment entered on these findings determined that the city is the owner of the easements claimed by it; that said easements are not exclusive but that the city's rights therein (other than to the aforementioned easterly six feet) are prior and paramount to the rights of defendant. It also decreed that defendant has the right, subject to permission of the fee owners of the servient lots, to install and maintain water mains and connections in the portions of the easements in which the city owns superior rights, provided such use does not unreasonably or substantially interfere with the city's proper use; and that defendant's present use of the easements along Arcadia Avenue is with permission of the fee owners of the servient lots, and does not unreasonably or substantially interfere with the city's proper superior use thereof.

On this appeal from the judgment, the major contention is that the trial court erred in failing to conclude as a matter of law that defendant's invasion of the city's easements was without right. As the point appears to me to be well taken, it will be unnecessary to discuss the city's secondary contention, that the trial court likewise erred in failing to find as a matter of fact that defendant's acts interfered unreasonably with the city's present and future use and occupancy of the easements.

According to the terms of the grant to the city of June 30, 1931, easements in the property described were conveyed to it "for the purpose of installing and maintaining water mains and connections thereto . . . all of said easements being five feet in width. . . . " The Civil Code, section 806, provides that "the extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was

acquired.'' This is in accord with the general rule that the extent of an easement by grant is determinable by a true construction of the conveyance. Doubtful language therein is to be construed in favor of the grantee, and the entire instrument is to be considered in the light of surrounding circumstances which have a legitimate tendency to show the intention of the parties. If the grant is specific in its terms, it is decisive of the limits of the easement. (17 Am. Jur., sec. 97, p. 995; Thompson on Real Property, Perm. Ed., vol. 1, sec. 368, p. 595; 9 Cal. Jur., p. 950, sec. 6.)

The language of the present grant is specific in conveying to the city easements five feet in width for water mains and connections, but it contains no express statement that the easements are ''exclusive.'' It is defendant's position that the absence of this word from the grant renders it doubtful in meaning, and requires application of the equally well settled rule that ''where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed.'' (*Winslow* v. *City of Vallejo*, 148 Cal. 723 [84 Pac. 191, 113 Am. St. Rep. 349, 7 Ann. Cas. 851, 5 L. R. A. (N. S.) 851]), and authorities above cited. Defendant argues that as the easements were conveyed to the city subject to certain prior easements, such as defendant's own prior right to the use of six feet, and as the evidence adduced on the trial showed that the property undoubtedly is also traversed or crossed at right angles by gas pipes, the manner of user by the city has established the nature of its easements as non-exclusive; that therefore the right remained in the city's grantor as fee owner, and passed from it on subdivision of the tract to purchasers of lots therein, to make any use or disposition of the property not inconsistent with interests already conveyed away, including the right to create any number of further easements so long as they were not such as would interfere unreasonably with the enjoyment of the non-exclusive easements already granted to the city and others.

This argument is not convincing. From the fact that it is settled as a general proposition that the owner of a servient estate retains a right to use his property for any purposes

consistent with the enjoyment of the easement (*Hoyt* v. *Hart,* 149 Cal. 722, 728 [87 Pac. 569]; *Dierssen* v. *McCormack,* 28 Cal. App. (2d) 164 [82 Pac. (2d) 212]), it does not follow that where an easement of *definite width* and specified location has been granted for a particular purpose, the omission of the word "exclusive" from the grant, or the failure of the grantee to presently occupy the property to the full width, will under all circumstances leave the servient owner with the right to create any number of concurrent easements for identical use of the same land. Under some circumstances, as in the case of an easement for a way over the surface of the ground, or for the conveyance of a specified amount of water in an open ditch, a grant may be correctly construed as non-exclusive and permitting concurrent identical uses. (*Hoyt* v. *Hart, supra.*) But even in cases of this type, where the way over the surface of the ground is one of expressly defined width, it is held that the owner of the easement has the right, free of interference by the owner of the servient estate, to use to the limits of the defined width even if the result is to give him a wider way than necessary. (*Ballard* v. *Titus,* 157 Cal. 673, 681 [110 Pac. 118].) The circumstances which attend the use of an easement for the installation, maintenance, and use of pipes underground are different from those which attend the use of a surface easement, and frequently require a different construction of the grant. In the leading case of *Winslow* v. *City of Vallejo, supra,* a grant was made in general terms to defendant city of a right of way over described land "for any water pipes or mains" which it might lay. The city originally installed a 10-inch main, but years later when that main had become inadequate, undertook to lay an additional 14-inch main within 3 feet of it. Applying the general rule previously quoted herein, this court held that as the grant was general in its terms, the limit and extent of the city's right had become fixed by the manner of its original user and could not be enlarged to include the right to lay additional pipes. But the court also indicated that if the terms of the grant had not been so general, a different result might have followed, saying: "It is of course true that for the purpose of ascertaining the extent and limits of the right granted the entire instrument is to be considered, in view of the circumstances surrounding its execution and the situation of the parties. (*Herman* v. *Rob-*

*erts,* 119 N. Y. 37 [23 N. E. 442, 16 Am. St. Rep. 800] [7 L. R. A. 226].) And if the language of the grant in question, viewed in the light of all the conditions existing when it was executed, clearly gave to the defendant a right in excess of the one actually used, such right would still exist, notwithstanding the exercise for a time of a lesser privilege. (*Quigney* v. *Baker,* 169 Mass. 303 [47 N. E. 1007].) "

From the rule of construction declared and applied in the above case, to wit: that "where a grant of an easement is general . . . an exercise of the right . . . limits it to the particular course or manner in which it has been enjoyed", it appears that the converse is likewise true, and where a grant of an easement is specific as to the extent of the burden to be imposed on the servient tenement and as to the width of a way to be occupied by pipes or mains, the terms of the grant and not the extent of the user define the rights of the grantee.

The grant of an easement of defined width to be used for pipes and mains will, in the absence of exceptional circumstances, convey a right in excess of a mere general easement of unspecified location such as that considered in the Winslow case; that is, it will convey a right to use the property to the full extent of the width stated in the grant. This is illustrated by the case of *Hamaker* v. *Pacific G. & E. Co.,* 59 Cal. App. 642 [211 Pac. 265], which involved an easement acquired by condemnation instead of by grant, but presented a question of application of the same rules of construction. The suit was one to quiet title, brought by plaintiff for the purpose of preventing defendant from enlarging its aqueduct traversing her property. The court upheld defendant's right to proceed with enlargement of the aqueduct, saying: "The principal ground urged for a reversal is that, since the defendant had constructed an aqueduct along the right of way acquired by condemnation and had used the same for several years, the limit of the land occupied by such aqueduct is the limit of defendant's rights in the plaintiff's land, citing *Winslow* v. *City of Vallejo.* . . . The right of way given the defendant by the judgment of condemnation, however, was a *definitely described* parcel of land with no limit upon the character of improvement to be constructed, except that it was to be an aqueduct for the conveyance of water . . . In *Western Union Telegraph Co.* v. *Polhemus,* 178 Fed. 904

[29 L. R. A. (N. S.) 465, 102 C. C. A. 105], where the trial court had held that the company was without the right to erect additional poles between those originally erected, it is said: 'We are clearly of opinion that the use of such additional poles as from time to time may be required to support the line is an incident to the old easement, and not a new one. It would be intolerable and at variance with salutary principles of law . . . if an easement could be taken piecemeal, so to speak, and for a lesser purpose than for the entire use, for the full enjoyment of which the right of condemnation is alone conferred' . . . It would be idle to condemn lands sufficient for prospective necessities if, when the necessity arose, the land could not be used without an additional condemnation.''

By the same reasoning it would be idle to purchase easement rights in definitely described property sufficient to cover prospective necessities if, when the necessity arose, the additional use could be defeated by a lawful occupancy of the property by identical works of one or more subsequent grantees. In construing the present grant, effect must be given to the phrase, ''all of said easements being five feet in width.'' This language is obviously not surplusage but serves to distinguish the grant from one of easements of undefined width, such as that considered in the Winslow case. The terms of the grant must be deemed to have contemplated the city's use of the property to the defined width for the installation, maintenance, repair, replacements, enlargement, or increase in number of water mains and connections, subject only to designated prior rights and consistent uses and free from danger of obstruction by incompatible competing uses. At the time of the grant there existed the possibility that the city might desire in the future to replace the mains with those of a larger size, or to relocate them within the five feet, or to lay additional mains. The language of the grant embraces these factors and indicates that the width of the easements may have been defined for the express purpose of protecting the city in the conduct of its present and future operations. Under the grant the city is entitled to protection not only in the exercise of its primary right but also in the exercise of its so-called ''secondary easement'' rights. ''Secondary easements'' are included in every easement and consist of the right, which must be exercised in

such reasonable manner as not to increase injuriously the burden upon the servient tenement, to do such things as are necessary for the full enjoyment of the easement. (*Anderson* v. *Southern California Edison Co.*, 77 Cal. App. 328 [246 Pac. 559]; *North Fork Water Co.* v. *Edwards*, 121 Cal. 662 [54 Pac. 69]; McKinney's Cal. Digest, vol. 9, p. 560, sec. 36.)

The emphasis placed by defendant upon the quality of exclusiveness is a false quantity. A grant does not have to be specifically designated as "exclusive" in order to transfer to the grantee the entire right conveyed. The present grant conveyed the entire right to the use of the five feet for water mains and connections and left in the servient owner no right of identical use of the property which could pass through him to subsequent grantees or licensees, including the defendant. There remained in the servient owner, it is true, a right to use the property in any manner and for any purpose consistent and compatible with the city's enjoyment of its easements (*Hoyt* v. *Hart, supra*), but it may not be said that a grant to a third party by the servient owner, or his successor, of the identical right given the city would be consistent or compatible with the city's enjoyment. Even if it be conceded that the servient owner himself might have maintained a water main across the property for his own purposes without interfering unreasonably with the city's right, it would not follow that the servient owner could grant a like right to a third party to use the easement for conducting operations in direct competition with the city without unreasonably invading and interfering with the city's right. That such a competing use constitutes an unreasonable interference is brought out by the facts of the present case which show that it enabled the defendant to gain the patronage of 22 of the 24 consumers who had theretofore used the city's water service.

Defendant seeks to classify the easement as one of a particular type which it denominates a "public utility strip", intended to be reserved by the original owner for the common use of all public utilities desiring to traverse the property with their pipes and mains. There is nothing in the wording of the grant to sustain this view nor are we cited to any authority which gives to any interest in real property or easement the legal classification of a "public utility

strip." No question is presented on this appeal as to the right of the servient owner, or his grantee or licensee, to make additional use of the easement for purposes not in competition with the city's operations, such as for gas or sewage mains.

The fact that the city has not yet used the easement to the full extent of the right of way and defined width described in the grant is immaterial, for it is well settled that an easement created by grant is not lost by mere non-user. (*City of Vallejo* v. *Scally,* 192 Cal. 175 [219 Pac. 63], and cases cited; *Currier* v. *Howes,* 103 Cal. 431 [37 Pac. 521]; *Parker* v. *Swett,* 40 Cal. App. 68 [180 Pac. 351].)

The record shows that the commencement of this suit by the city was timely. Defendant's invasion of the Arcadia Avenue easement occurred during the week of April 13–20, 1937, and installation of its works was completed in that period. On what date the city first received notice of the trespass, the record does not show, but even if it received immediate notice, the construction was completed too quickly to charge the city with laches or estoppel for failure to attempt to halt its progress by legal proceedings. The city's original complaint herein was seasonably filed on June 22, 1937.

The city is faced with irreparable injury in that continued actual and threatened occupancy of its easements by defendant might result in impairment or loss of its right through operation of the doctrines of prescription, adverse possession, estoppel, or intervention of the public use. The city is therefore entitled, irrespective of the issue of damages, to full protection of its rights. (*Danielson* v. *Sykes,* 157 Cal. 686 [109 Pac. 87, 28 L. R. A. (N. S.) 1024]; *Mendelson* v. *McCabe,* 144 Cal. 230 [77 Pac. 915, 103 Am. St. Rep. 78]; Tiffany, Real Property, 3d ed., vol. 3, p. 364, sec. 815; 14 Cal. Jur., p. 221, sec. 34.) It is also entitled to recover damages, if any, which it may have suffered by reason of defendant's acts.

The judgment should be reversed.

Carter, J., concurred.