Filed 7/28/25  Rancho Carlton Properties v. Radnor CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RANCHO CARLTON PROPERTIES, LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOSH RADNOR,<br><br>Defendant and Respondent. | B334050<br><br>(Los Angeles County Super. Ct. No. BC662602) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed as modified.

Macias Counsel and Sean E. Macias; Chuck & Tsoong, Stephen C. Chuck and Victoria J. Tsoong; Fidelity National Law Group and Kenneth F. Spencer for Plaintiff and Appellant.

Law Office of Kyle Kveton and Kyle Kveton; Cunningham, Treadwell & Bartelstone and James H. Treadwell; Long & Levit, and Leigh P. Robie for Defendant and Respondent.

———————————————

Rancho Carlton Properties, LLC, owns a lot in the Hollywood Hills (Lot 19).  The Josh Radnor Trust, of which Josh Radnor is trustee, owns an adjoining lot to the east (Lot 20) that has an easement over Lot 19 for a barbecue, a walkway, and a retaining wall.  The trial court initially interpreted the written easement to be nonexclusive, allowing for shared use of the improvements, but the trial court granted Radnor exclusive control over most of the easement area as a necessary incident of his easement rights.  In an unpublished decision, *Rancho Carlton Properties, LLC v. Radnor* (May 23, 2022, B306473) (*Rancho Carlton I*), this court reversed and remanded with directions to enter a new judgment based on our interpretation of the written easement to provide the dominant tenement with exclusive use of the improvements and nonexclusive use of the remaining easement area.  We also concluded that no equitable doctrines applied.

Following remand, the trial court entered a new judgment granting the owner of Lot 20 exclusive control of the improvements, exclusive control of a strip of Rancho Carlton's property next to the improvements, and nonexclusive use of the remaining easement area.  Plaintiff, cross-defendant, and appellant Rancho Carlton appeals from the judgment entered after remand in favor of defendant, cross-complainant, and respondent Radnor.  On appeal, Rancho Carlton contends the trial court provided the dominant tenement with exclusive control of a greater area than directed by the appellate court.  We agree.  We modify the judgment to provide Radnor with exclusive control of the improvements and nonexclusive use of the

2

remaining easement area to the extent necessary for enjoyment of the improvements.  As modified, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Subdivision and Sale of Properties

In 1965, Wallace Van Allen Jones owned a large property in the Hollywood Hills improved with a multi-story house built against the hillside.  In the backyard, an improvement beginning at the back of the house leads west to a brick barbecue structure nestled into the hillside.  This improvement could reasonably be called a walkway, a patio, or a deck, as it shares features of all three.  The walkway and barbecue area is bounded on the western edge by a brick garden wall.  In the hillside west of the garden wall is a brick retaining wall.

Jones subdivided the property into multiple lots.  To make lots of legal size, the new property lines had to cut through the location of the existing backyard improvements.  After the subdivision, the original single-family home was located on Lot 20, but part of the backyard walkway, the brick barbecue structure, and the brick retaining wall, were now located on Lot 19.

Lot 20 was sold to Radnor's predecessor-in-interest with several easement rights that allow the dominant estate (Lot 20) to continue using portions of the adjacent properties for the existing improvements.  Lot 20 has an "easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes" over Lot 19.  The improvements sit on the northeast corner of Lot 19, but the area provided in the deed for the

3

easement includes more than half of Lot 19. The deed stated, "It is understood and agreed that the above easement will terminate when the improvements now located on the above described portions of Lots 19 and 20 . . . have been demolished."

Lot 19 remained vacant for decades. As a practical matter, because the eastern half of Lot 19 is subject to the easement rights of Lot 20, any construction on Lot 19 was restricted to the western half of the lot, ensuring a buffer of undeveloped hillside between new construction on Lot 19 and the original backyard improvements.

In 2005, the owner of Lot 19 began construction on the western half of the lot for a house with its own barbecue area. Portions of the new house encroached on the easement area. In 2007, as part of the construction, the owner of Lot 19 built a substantial retaining wall in the easement area, running from the top of the hillside to the street level without any opening, and topped with a wrought iron fence.

After the 2007 wall was built, to access the eastern part of Lot 19 from the new home, one would have to step over the back of the barbecue on Lot 19 or use a ladder to climb over the 2007 wall to step onto the hillside in the easement area. After crossing the hillside between the homes, one would jump down over the brick garden wall to reach the walkway and barbecue area.

Radnor purchased Lot 20 in 2007, while construction on Lot 19 was ongoing. He did not understand that the barbecue and walkway connected to his house were not located on his property, but rather, on his neighbor's property. He also did not understand that the hillside to the west of the improvements was his neighbor's yard, over which he simply held an easement to the extent necessary to enjoy the barbecue and walkway. He

assumed the property line for Lot 20 was located where the newly constructed 2007 wall had been placed. In 2014, he remodeled the aging barbecue area.

In 2016, Lot 19 was purchased by Rancho Carlton, which is owned by Scott Anderson and his mother.[1] Scott and his wife Diana Anderson live part of the year at the house on Lot 19 and part of the year in Tempe, Arizona.

## B. Complaint and Trial

Rancho Carlton believed the easement over Lot 19 was nonexclusive, allowing the owners of both properties to share the barbecue and the walkway, and furthermore, Rancho Carlton believed Radnor's renovation of the improvements terminated the easement. On August 20, 2019, Rancho Carlton filed the operative fourth amended complaint against Radnor for declaratory relief, quiet title, injunctive relief, trespass, and nuisance. Radnor filed a cross-complaint against Rancho Carlton, Scott, and Diana, for interference with easement, declaratory relief, quiet title, and injunctive relief. Radnor sought exclusive control of the entire easement area east of the 2007 wall.

During the course of a 10-day jury trial, the trial court interpreted the language of the easement over Lot 19 to be nonexclusive. In other words, under the trial court's interpretation, the written easement allowed for shared use of the improvements. After further proceedings, the court issued a statement of decision and an amended judgment with the

---

[1] Because more than one party shares the last name Anderson, they will be referred to individually by their first names for ease of reference.

following findings. Because the jury found Radnor had not demolished the improvements, the easement had not been terminated. The court exercised its equitable powers to give Radnor exclusive use of the entire easement area east of the 2007 wall. The court ruled that Radnor and his successors-in-interest, as a necessary incident and as necessary to protect his rights as an easement holder, would have the sole use and exclusive control of the portion of the easement area east of the 2007 wall for its intended use and purpose. The court ruled that Rancho Carlton and its successors-in-interest, as a necessary incident to and as necessary to protect its rights, would have sole use and exclusive control of that portion of the easement area west of the 2007 wall.

Rancho Carlton was prohibited from creating a gate or passageway through or around the 2007 wall. Rancho Carlton, Scott, Diana, and their successors-in-interest were enjoined from obstructing or interfering with the sole use and exclusive control of Radnor and his successors-in-interest from the area east of the 2007 wall. However, the court provided Rancho Carlton with access to an area five feet east of the 2007 wall for maintenance or repair of utility lines located on the east side of the 2007 wall that service Rancho Carlton's property, including an irrigation pipe, low voltage electrical line, gas line, water line, and drainage pipe.

## C. Appeal

Rancho Carlton appealed from the judgment. In *Rancho Carlton I*, we relied on basic property law principles to determine the parties' rights. The grant of an easement is generally

6

interpreted liberally in favor of the grantee (*Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 (*Dolnikov*)), but an intent to convey an exclusive easement, which essentially amounts to a fee interest, must be clearly stated (*City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 578 (*Pasadena*)).  When an easement is based on a grant deed, the easement holder receives only the interests that are expressly stated and those necessarily incident thereto.  (*Pasadena, supra*, 17 Cal.2d at p. 579.)  The owner of the servient estate continues to be able to use the land in any way that does not interfere unreasonably with the purpose of the easement.  (*Ibid*.)  The grantor does not need to expressly reserve any interest, because any incident of ownership that is not inconsistent with the easement and the enjoyment of the easement is retained by the owner of the servient estate.  (*Ibid*; *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*).)

Every easement includes "secondary easements" to accomplish the things necessary for full enjoyment of the easement, such as the right to make repairs, changes, or improvements to the servient tenement that do not affect the substance of the easement, but this use of the easement rights must burden the servient estate as little as possible.  (*Dolnikov, supra*, 222 Cal.App.4th at pp. 428–429; *Scruby, supra*, 37 Cal.App.4th at p. 702.)  The easement holder cannot change the character of the easement or materially increase the burden on the servient estate.  (*Dolnikov, supra*, 222 Cal.App.4th at p. 429.)

" 'Neither party can conduct activities or place obstructions on the property that unreasonably interfere with the other party's use of the property.  In this respect, there are no absolute rules of conduct.  The responsibility of each party to the other and

7

the "reasonableness" of use of the property depends on the nature of the easement, its method of creation, and the facts and circumstances surrounding the transaction.' [Citation.]" (*Dolnikov, supra,* 222 Cal.App.4th at pp. 428–429.) To determine whether the owner of the servient estate has taken actions that unreasonably interfered with exercise of the easement, the court must balance the parties' interests in favor of a reasonable accommodation that will maximize the overall utility of the property while effectuating the purpose of the easement and the intent of the parties. (*Id.* at p. 430.)

Applying these basic principles, we concluded the deed to Lot 20 conveyed exclusive use of the barbecue and the walkway located on Lot 19 to the owner of the dominant estate as a necessary incident of the easement. The design of the improvements does not reasonably allow for shared use by the owners of multiple properties. The improvements were originally constructed as one integrated backyard for the single-family home on Lot 20 before the property was subdivided into multiple lots. The barbecue and the walkway are a continuous improvement connected to the home on the dominant estate, set back into the hillside, with no access from the street or the surrounding properties. The owner of the servient tenement would have to cross the hillside and jump down over a brick garden wall to use the improvements. To allow the owner of the servient tenement to use the barbecue or the walkway a few feet from the home on Lot 20 would unreasonably interfere with the easement rights of the dominant estate. We agreed with the trial court that shared use of the improvements would cause myriad disputes, including issues of privacy, scheduling, noise, and maintenance costs. Based on the evidence in the record, it was

8

clear that exclusive use of the barbecue and the walkway was a necessary incident to enjoyment of the easement and was consistent with the intent of the grantor.

We concluded, however, that the deed did not give the owner of Lot 20 exclusive use of the remaining easement area as a necessary incident of the dominant estate's easement rights. Every incident of ownership that is not inconsistent with the easement is reserved to the owner of the servient estate, and neither party may conduct activities in the easement area that unreasonably interfere with the other party's right to use the property. The undisputed facts showed that the owner of Lot 20 did not require exclusive use of the entire easement area as a necessary incident of the easement for the barbecue, walkway, and retaining wall. In fact, there was no evidence that Radnor or his predecessors-in-interest had used the easement area west of the brick garden wall for any purpose other than the existing brick retaining wall. The owner of the servient tenement was able to construct a home that invaded the easement area and install a substantial retaining wall that effectively excluded the easement holder from the west end of the easement area without overly burdening Radnor's use of the easement. We construed the grant deed to allow Rancho Carlton to use the easement area outside of the location of the barbecue and walkway for any activity, as long as it did not unreasonably interfere with Radnor's use of the easement for the improvements listed in the deed.

After setting forth the scope of the easement conveyed over Lot 19, we concluded none of the equitable doctrines raised by Radnor applied under the circumstances in this case. We addressed the parties remaining contentions, reversed the

9

judgment, and remanded the matter with instructions to enter a new and different judgment providing relief in accordance with our opinion.

## D. Remand

After remand, Radnor filed a status conference statement in the trial court arguing that the sole task was to enter a new judgment in compliance with the appellate opinion. Rancho Carlton filed a status conference statement arguing that several issues addressed in the prior judgment had been reversed and left unresolved, including the parties' obligations for property taxes, insurance, permits for the improvements, and maintenance.

Radnor filed a brief in support of his proposed judgment. He argued this appellate court in *Rancho Carlton I* had found he was entitled to the same relief as in the original judgment, but for different legal reasons. Radnor asserted that given the physical layout and historic use of the properties, it made no sense to allow Rancho access to, or use of, the portion of the easement on the eastern side of the wall. To do so would interfere with Radnor's use of the improvements because myriad disputes could arise with shared use. Radnor's proposed judgment declared he had an exclusive right to use the easement area where the improvements were located, as well as sole use and exclusive control of the portion of the easement area up to and including the eastern surface of the 2007 wall, based on the language of the deed. Rancho Carlton would have the right to use the easement area west of the 2007 wall only.

10

Rancho Carlton submitted a brief addressing issues of taxes, insurance, permits, maintenance, and access. Rancho Carlton also filed a response to Radnor's brief arguing that Radnor was asking the trial court to ignore the explicit findings of the appellate court in *Rancho Carlton I* and enter the same judgment as had been reversed.

Radnor filed a response as well. In March 2023, a status conference was held. The trial court concluded each party was only partly right. There would be no additional evidentiary hearing. The original judgment had provided exclusive use of the entire property east of the 2007 wall to Radnor. The appellate court had reversed, finding the deed conveyed an exclusive right to use the area where the improvements were located and a non-exclusive right to use the remainder of the easement area to the extent the use was a necessary incident of the easement.

Radnor's attorney argued that people sitting in the easement area west of the barbecue would interfere with Radnor's reasonable use of the improvements. Rancho Carlton's attorney responded that *Rancho Carlton I* already established the owner of Lot 19 could use the easement area west of the improvements as long as the use did not interfere. The appellate court had expressly rejected Radnor's position that any use of the easement area east of the 2007 wall necessarily interfered with Radnor's use of the improvements.

Radnor's attorney stated that people in the easement area west of the improvements would necessarily interfere with his exclusive right to have a backyard. Rancho Carlton's attorney responded that whether a particular use interfered with Radnor's easement would be a new issue for trial, not simply a post-judgment interpretation of the appellate court opinion. When the

11

trial court noted that Rancho Carlton could remove the 2007 wall, since the owner of Lot 19 had put up the wall without objection and could take it back down, Radnor's attorney expressed shock and stated removing the wall would interfere with Radnor's property rights. Rancho Carlton's attorney objected that Radnor had no control over the 2007 wall based on the 1965 deed. The court instructed the parties to submit proposed judgments and maps, which the court would alter for a tentative judgment.

The parties submitted proposed judgments. Both parties designated the location of the barbecue, walkway, and brick garden wall for exclusive use by Radnor. The primary difference between the proposals was that Radnor's version also provided the dominant estate with exclusive control of a J-shaped strip of land west of the brick garden wall, running between the brick retaining wall and the brick garden wall from the northern edge of the property, down along the barbecue area, and curving in a "j" until meeting the 2007 wall. Radnor designated the remainder of the easement area as nonexclusive. Rancho Carlton's proposed judgment designated the entire area outside of the improvements as nonexclusive.

A status conference was held on June 23, 2023. The trial court's tentative judgment was based primarily on Radnor's proposal, providing exclusive control over the j-shaped strip of property west of the improvements. Rancho Carlton objected that the boundaries of the easement should not rely on the 2007 wall. With respect to the strip of property in dispute, Rancho Carlton argued that the tentative judgment ignored the appellate court's findings and made a determination about the reasonableness of conduct that had not even occurred.

12

The trial court focused on the following direction in *Rancho Carlton I*: "We remand for the trial court to enter a new judgment providing relief based on our interpretation of the 1965 grant deed as conveying exclusive use of the area where the improvements are located as a necessary incident of the easement and conveying nonexclusive use of the remaining easement property." The trial court concluded "the area where the improvements are located as a necessary incident of the easement" must include some distance from the barbecue.

Radnor argued *Rancho Carlton I* found Radnor's easement rights included exclusive use of the area where the improvements were located and exclusive use of the areas necessary to allow him to enjoy that area. Radnor argued that it would be an unreasonable interference with Radnor's quiet enjoyment of the area where the improvements were located if his neighbors could essentially sit next to his patio in the adjacent area.

On August 23, 2023, the trial court entered a revised judgment granting Radnor exclusive use of the area where the improvements are situated, exclusive use of a J-shaped strip of Rancho Carlton's property west of the improvements, and nonexclusive use of the remaining easement area.

## DISCUSSION

### A.  Standard of Review

"Whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review.  [Citations.]  [¶] Our remittitur directions are contained in the dispositional language of our previous opinion.  [Citation.] The trial court's

13

interpretation of those directions is not binding on us. [Citation.] We look to the wording of our directions to determine whether the trial court's order comports with them. [Citation.] When, as in this case, the reviewing court remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole. [Citation.]" (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.)

## B. Area West of the Improvements

Rancho Carlton contends that the trial court incorrectly interpreted this court's directions by granting Radnor exclusive use of a strip of property west of the improvements. Rancho Carlton is correct.

The guiding principle is that the owner of the servient estate retains every incident of ownership that is not actually inconsistent with the easement. (*Pasadena*, *supra*, 17 Cal.2d at p. 579.) The easement holder receives only the interests that are expressly stated in the grant deed and those necessarily incident thereto. (*Ibid*.) The owner of the servient estate continues to be able to use the land in any way that does not interfere unreasonably with the purpose of the easement. (*Ibid*.)

In this case, Lot 20 has an "easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes" on Lot 19. In *Rancho Carlton I*, we determined, based on the location, historic use, and design of the improvements, that exclusive use of the improvements by the owner of Lot 20 was a necessary incident of the easement. The easement area where the improvements are situated, from the brick garden wall

14

to the eastern edge of the easement, is reserved for the exclusive use of the owner of Lot 20, as the parties now concede.

The easement area west of the brick garden wall, however, is a strip of hillside slope that simply contains trees, bushes, and retaining walls.  The owner of Lot 19 may conduct several activities in the area west of the brick garden wall without unreasonably interfering with the easement holder's right to use the easement area for the improvements, such as clearing dead brush, installing a sprinkler system for fire prevention, tree inspection, or rodent mitigation.  In fact, the owner of Lot 19 installed a substantial retaining wall in the easement area that prevented the easement holder from accessing a third of the easement area, but also made it more difficult and less likely for the owners of Lot 19 to access the eastern portion of their property.  Rather than interfering with the easement holder's use of the easement area, the evidence showed that on balance, the servient tenement's construction of the 2007 wall benefited the easement holder through additional privacy and hillside stability.  Although we can imagine activities by the owner of the servient tenement that would unreasonably interfere with Radnor's use of the easement area for the improvements, we construed the grant deed to allow Rancho Carlton to use the easement area outside of the location of the barbecue and walkway for any activity that did not unreasonably interfere with Radnor's use of the easement for the improvements listed in the deed.

Radnor argued that one activity – sitting in the easement area west of the garden wall – would interfere with his enjoyment of his easement rights, and therefore, he was entitled to exclusive use of the property.  It may be that if the owners of Lot 19 set up lawn chairs west of the garden wall and train binoculars on Lot

15

while people are barbecuing or using the walkway, it would unreasonably interfere with the easement holder's rights, but as we explained above, there are several activities that the owner of Lot 19 may conduct in a reasonable manner in the same easement area which would not interfere with Radnor's right to use the barbecue, walkway, and retaining wall on the property. The bottom line is that it's Rancho Carlton's property. Rancho Carlton pays taxes on the property and is responsible for maintenance in the easement area outside of the improvements owned by the dominant tenement. Rancho Carlton continues to be able to use the property in any manner that does not unreasonably interfere with Radnor's use of the easement area for the purposes of the easement. In *Rancho Carlton I*, we determined that there was no evidence Radnor required exclusive control over the easement area west of the garden wall as a necessary incident of the easement. The judgment entered after remand must be modified to conform to this court's decision.

# DISPOSITION

The judgment is modified as follows. In paragraph 10, the final sentence, beginning between lines 20 and 21, is modified to state in its entirety: "Accordingly, Radnor and his successors-in-interest shall have sole use and exclusive control of that portion of the easement area specifically depicted on Exhibit A as the horizontal lined area."

In paragraph 11, the first sentence shall remain and everything after the first sentence is stricken.

In paragraph 12, the beginning of the first sentence is modified to state: "As for the remainder of the easement, (depicted by cross-hatched lines, vertical lines, and diagonal lines on Exhibit A)," with the rest of the sentence remaining the same.

Paragraph 13 is modified to state in full: "The improvements listed in the grant deed for Lot 20 that are located on Lot 19 shall be maintained in good repair by Defendant and Cross-Complainant, Josh Radnor, Trustee of the Josh Radnor Trust, and his successors-in-interest, who shall be solely responsible for all costs and expenses associated with the maintenance and repair of the barbecue, walkway, and retaining wall permitted by the Easement Appurtenant, unless and until the improvements are destroyed."

In paragraph 15, the final sentence, which states, "Plaintiff and Cross-Defendant Rancho Carlton Properties, LLC, its agents and its successors-in-interest are prohibited from creating any sort of gate or passageway through or around the "Concrete Retaining Wall With Wrought Iron Atop" as described herein;" is stricken.

In the key to Exhibit A attached to the judgment, the description of the area shown by cross-hatched lines, which is the second on the list, is changed from "Exclusive Use (Paragraph 10)" to "Non-Exclusive Use, servient tenement's use cannot unreasonably interfere with dominant tenement's easement rights (Paragraph 12)." The descriptions of the areas shown through vertical and diagonal lines, which are listed third, fourth, and fifth, are modified to state, "Non-Exclusive Use, servient tenement's use cannot unreasonably interfere with dominant tenement's easement rights (Paragraph 12)."

As modified, the judgment is affirmed. Appellant Rancho Carlton Properties, LLC, is awarded its costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


BAKER, Acting, P. J.


KIM (D.), J.