Filed 1/26/24  Swenson v. Close CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARK R. SWENSON et al.,<br><br>   Plaintiffs, Cross-defendants and Appellants,<br><br>   v.<br><br>CAROL W. CLOSE et al.,<br><br>   Defendants, Cross-complainants and Respondents. | D081067<br><br><br>(Super. Ct. No. 37-2020-00020652-CU-OR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed in part and affirmed in part.

Walker Law Office and Charles F. Walker, for Plaintiffs, Cross-defendants and Appellants.

Law Office of Danny R. McDonald and Danny R. McDonald, for Defendants, Cross-complainants and Respondents.

INTRODUCTION

This appeal stems from a dispute between adjoining landowners regarding the use of a driveway easement by respondents Carol and Charles Close (together, the Closes).  The grant deed describing the easement

provides for "an easement and right of way for private driveway purposes over and along and across that portion of Lot 2 of Pine Manor which lies westerly of the northerly prolongation of the easterly line of Lot 1 of said Pine Manor" (the easement).[1]  The Swensons objected to the Closes using the easement for parking, basketball games, neighborhood parties, placement of personal property, and watching fireworks.

The Swensons sued for quiet title; declaratory and injunctive relief; trespass and ejectment; and private nuisance and abatement of the nuisance. The Closes cross-complained for declaratory relief and prescriptive easement.[2]  Following a one-day bench trial, the trial court issued a statement of decision (SOD) interpreting the easement as affording the Closes "a limited, non-exclusive easement to park their cars on the driveway in a reasonable manner so as to avoid obstruction of [the Swensons'] access to their property."  The court further construed the easement as authorizing pedestrian traffic but declined to make a specific finding as to placing personal property on the easement.

---

[1]     Lot 1 is owned by the Closes.  Lot 2, which includes the driveway over which the easement runs, is owned by appellants Mark and Valerie Swenson (together, the Swensons).

[2]     The first amended cross-complaint also included a cause of action for adverse possession.  Argument by counsel for the Swensons at trial suggests that they demurred to the adverse possession cause of action on the grounds that the Closes could not demonstrate adverse possession because they had not paid taxes on the property.  Although the record does not contain the briefing and court rulings reflecting the subsequent proceedings, Carol admitted in response to an interrogatory that she was "no longer seeking fee simple title and has conceded this cause of action should be deleted from the [first amended cross-complaint] in her Response to Demurrer."

On appeal, the Swensons contend the trial court erred as a matter of law in interpreting the easement. We agree and, therefore, reverse the judgment[3] as to the Swensons' quiet title cause of action and requests for declaratory and injunctive relief. We otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Trial Evidence*

In 1965, the Pine family sold the property described as Lot 2 of Pine Manor to the Willet Land Company. The deed conveying the property included a provision "reserving an easement and right-of-way for private driveway purposes over, along, and across that portion of said Lot 2 which lies westerly of the northerly prolongation of the easterly line of Lot 1 of said PINE MANOR." A few months later, the Boland family purchased Lot 2 from the Willet Land Company. The Swensons purchased Lot 2 from the Bolands in 2014.

---

[3] Statements of decision generally are not appealable. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) However, "[r]eviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Ibid.*) Because the SOD in this case was signed and filed; an entry of the same date on the register of actions states: "Matter decided;" and it does not appear any subsequent orders or judgments issued; we conclude the trial court intended the SOD to be its final decision in the case and exercise our discretion to treat it as such. Accordingly, we will refer to the SOD as the "judgment" in this case. (See Cal. Rules of Court, 8.104(e) [including appealable orders in the category of judgments for purposes of determining the timeliness of a judgment].)

3

Meanwhile, in 1966, the Malanga family purchased Lot 1 and the easement described *ante* from the Pines.[4]  In 2011, the Closes purchased Lot 1 and the easement from the Malangas.

Lot 2 is shaped like a flag on a flagpole, with the driveway as the pole leading up to the Swenson home.  The Swensons' house is at a higher elevation than the Closes' on the same side of the driveway and looks out over a coastal area and bay.  Both homes have garages that open to the driveway, with the Closes' garage located between the driveway and the home on the way up the slope to the Swenson home.  The easement, which is approximately 20 feet wide, extends along the property line of Lot 1.  There is a gap of roughly seven-and-a-half feet between the easement and the Closes' garage door.

The Closes have never parked their cars in their garage.  Instead, they park them by the garage door, with the vehicles protruding into the easement.  Carol testified that the only access to her house is via the easement because the driveway also leads to a sidewalk that extends from the driveway to her front door.  She explained that it is impossible to walk directly up to her front door from the street because the hill is steep, there is no stairway, and no one could get through the landscaping she referred to as "the jungle" in her front yard.  In the Closes' view, the parking area within the easement that is in front of the garage is exclusively for their use as well as for their friends and visitors.  They acknowledge having parked their cars there in a hostile, continuous, exclusive, open, and notorious manner since 2011.

---

[4]     The language of the easement conveyed in this grant deed varied slightly, and in a nonsubstantive manner, from the original easement reservation and reflects the language subsequently used in the sale to the Closes.

Valerie Swenson testified that she initially did not say anything about the cars in an effort to be a good neighbor and indicated to Carol her permission to park outside the garage by waving and smiling when she saw Carol parking her car. But once she noticed that three cars were being parked there and that a red Subaru had not been moved in months, was covered with cobwebs and weeds, had expired plates, and was parked several feet into the easement, she began to become unhappy. Mark Swenson said the Closes regularly parked two to three cars by their garage, encroaching four to eight feet into the easement, but agreed that they initially granted the Closes "passive permission by waiving and acknowledging their presence without interference."[5]

On April 14, 2020, Mark sent a letter to Carol stating that the easement on the driveway was for ingress and egress but did not allow the Closes to park their vehicles on the driveway. He indicated that they considered the Closes to be trespassing in parking on the driveway. The Swensons also posted a "Private Property. No Trespassing" sign. The Closes responded by sending a letter from their attorney indicating that they believed the only restriction on their use of the easement was that they could not completely prevent ingress and egress by the Swensons.

B. *Statement of Decision*

After the trial, the trial court issued its SOD. It indicated that, in interpreting the easement and resolving the dispute, it "considered the entirety of the clause while striving to 'make sense' of all of the words 'when taken together' (CACI 317) and . . . considered 'how the parties acted after (the deeds were) created but before any disagreement between the parties arose' (CACI 318)."

---

[5] The Closes disputed these assertions of "permission."

As to the Swensons' quiet title claim, the trial court noted that the Swensons sought in their first amended complaint a ruling that "parking is not allowed, [and] placement of personal property or pedestrian access is not allowed within the subject easement unless express written permission is given to Lot 1 occupants or others by the duly recorded owners or their authorized agents of Lot 2." In response, the court concluded as follows:

> "The Court agrees in part and disagrees in part with [the Swensons]. The Court agrees that the driveway easement is not a parking lot where [the Closes] may park car(s) interminably which approach, if not become, a blight. This finding is consistent with the portion of the easement which limits [the Closes'] use to 'purposes over, along and across' the driveway. However, the Court disagrees with [the Swensons] that [the Closes] parking their cars on the driveway at or near the garage to their house is not incident to and consistent with the 'purposes' of a private driveway. Under a reasonable construction of the easement, [the Closes] possess a limited, non-exclusive easement to park their cars on the driveway in a reasonable manner so as to avoid obstruction of [the Swensons'] access to their property.

> "Pedestrian access between Galveston Street and [the Closes'] residence is also incident to and consistent with 'purposes over, along and across' the driveway.

> "Finally, the Court declines to make a specific finding on the 'placement of personal property' on the driveway. Though the examples cited at trial appeared to be a shade tent (Exh's '21-22'), a worker in a truck (Exh '20') and a basketball court, [The Closes] explained that these were transitory. [The Closes'] explanation struck the Court as reasonable. [The Closes] are admonished that their use of the driveway for the 'placement of personal property' must be exercised in a reasonable manner so as to avoid obstruction of [the Swensons'] access to their property."

The court also incorporated this finding in response to the Swensons' declaratory relief claim.

6

In addressing the Swensons' request for an injunction, the trial court indicated that it was "not persuaded that [the Swensons] have satisfied their burden of demonstrating that the balance of harms weighs in favor of injunctive relief at this time or, given the Court's above finding not to accept their interpretation of the driveway easement, that they are (or will be) the prevailing parties."

With regard to the Swenson's trespass claim, the court stated that, in view of its interpretation of the easement, it found that the Swensons had "not carried their burden that [they] did not give permission for [the Closes'] entry or that [the Closes] exceeded [the Swensons'] permission." Additionally, while it agreed with the Swensons that the Closes "may not interminably park car(s) on the driveway, which become a blight," the court was "not persuaded that [the Closes] have disrupted [the Swensons'] 'views of the bay and ocean.' "

Finally, the trial court rejected the Swenson's private nuisance claim, finding they had not carried their burden of showing the Closes created a condition that was harmful to their health, was indecent or offensive to their senses, obstructed their free use of property, or was potentially dangerous.

Turning to the Closes' cross-claims, the court incorporated its findings on the Swensons' quiet title and declaratory relief claims in addressing the Closes' declaratory relief cross-claim. It further concluded that the Closes had "failed to carry their burden that, beyond the limited, non-exclusive easement they already possess, [the Closes][6] acquired a prescriptive easement."

---

[6] The court found that "Plaintiffs" had not acquired a prescriptive easement, but read in context, we presume the court meant to refer to the Closes.

## DISCUSSION

## I.

### *The Trial Court Erred in Interpreting the Easement*

The Swensons contend the trial court erred in construing the easement as allowing for permanent parking by the Closes. We agree.

### A. *Legal Principles*

An easement is a limited privilege to use another's land but does not create an ownership interest. (*Kazi v. State Farm Fire and Casualty Co.* (2001) 24 Cal.4th 871, 881; *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1174.) The existence of an easement creates two tenements: the dominant tenement is held by the individuals who hold the right to go over another's land (e.g., here, the Closes); the servient tenement is held by the owners whose land is traversed (e.g., here, the Swensons). (See Civ. Code, § 803; *Kazi*, at p. 881.)

When an easement arises from an express grant, the use of the easement is determined by the terms of the instrument creating it. (Civ. Code, § 806; *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579 (*Pasadena*).) "[O]nly those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*Pasadena*, at p. 579; *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702.) Meanwhile, "[t]he owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement." (*Scruby*, at p. 702.) "Every incident of ownership not inconsistent with the easement and the enjoyment of the same

8

is reserved to the owner of the servient estate." (*Ibid.*; *Dolske v. Gormley* (1962) 58 Cal.2d 513, 519 (*Dolske*).)

An express easement is interpreted in the same manner as a contract. (Civ. Code, § 1066; *Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 70; *Kerr Land & Timber Co. v. Emmerson* (1965) 233 Cal.App.2d 200, 219.) The primary objective is to ascertain and carry out the parties' intentions. (See *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 (*Manhattan Beach*); *Palos Verdes Corp. v. Housing Authority of Los Angeles County* (1962) 202 Cal.App.2d 827, 835 (*Palos Verdes*) ["The primary object of the interpretation of a deed is to ascertain and give effect to the intention of the parties, especially that of the grantor, *as it existed at the time of the execution of the instrument*" (italics added)].) " 'The intention of the parties to a grant is to be gathered, if possible, from the instrument itself and is determined by a proper construction of the language used, rather than by resorting to extrinsic evidence.' [Citation.]" (*Norris v. State ex rel. Dept. of Public Works* (1968) 261 Cal.App.2d 41, 46; see also *Pulliam v. Bennett* (1880) 55 Cal. 368, 371.) "If the language of a deed is plain, certain and unambiguous, neither parol evidence nor surrounding facts and circumstances will be considered to add to, detract from or vary its terms . . . ." (*Palos Verdes*, at p. 836; Civ. Code, § 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"].) "Moreover, ' "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." ' " (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 42.)

9

On appeal, the reviewing court is not bound by the trial court's construction of the deed if said construction was " ' "based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation]." [Citations.]' " (*Manhattan Beach*, *supra*, 13 Cal.4th at p. 238.) "In such circumstances, the appellate court exercises its independent judgment as to the construction of the instrument at issue." (*Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 352 (*Machado*).)

B.    *Analysis*

In interpreting the deed language granting the easement, the trial court stated that it "considered 'how the parties acted after (the deeds were) created before any disagreement between the parties arose' " pursuant to CACI No. 318. We find no authority applying this instruction to interpretation of a deed or other instrument where, as here, the language was not drafted by the parties to the dispute. As the Supreme Court explained in *Crestview Cemetery Association v. Dieden* (1960) 54 Cal.2d 744, 752–753, "[t]hat the actions of the parties should be used as a reliable means of interpreting an *ambiguous* contract is, of course, well settled in our law" (italics added). This is because " '[t]he acts of the parties under the contract afford one of the most reliable means of arriving at *their* intention . . . .' " (*Id.* at p. 753, italics added.) Because neither the Swensons nor the Closes had any say in the language of the easement drafted decades before, we conclude it was improper for the trial court to consider their actions in construing the easement language. (C.f. *Palos Verdes*, *supra*, 202 Cal.App.2d at p. 835 [relying on the parties' intentions *at the time the instrument was executed* in interpreting the deed].)

10

Additionally, nothing in the trial court's SOD indicates that it found the language ambiguous. Rather, the trial court based its conclusion that the Closes "possess a limited, non-exclusive easement to park their cars . . . on the driveway in a reasonable manner so as to avoid obstruction of [the Swensons'] access to their property" on "a reasonable construction of the easement." When the instrument is unambiguous, the court should not consider extrinsic evidence or surrounding facts and circumstances in interpreting its language. (*Palos Verdes*, *supra*, 202 Cal.App.2d at p. 836; Civ. Code, § 1638.)

While we appreciate the trial court's effort to reach a pragmatic solution, the court's approach left both parties with more questions than answers. Furthermore, calling it a "non-exclusive" easement does not make it non-exclusive in reality. If the Closes routinely park cars on the easement, then the Swensons cannot use the property under the cars. When, as a practical matter, the true owners are completely prohibited from using their land, the easement is exclusive. (*Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 564 [concluding that "the notion of an exclusive prescriptive easement . . . has no application to a simple backyard dispute"].) Generally, an exclusive easement is only found to exist where the language of the instrument "clearly expresse[d] an intention that the use of the easement area be exclusive" (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1032), which is not the case here. There also is no indication that the trial court

11

exercised its equitable powers in granting the Closes a right to park on the easement.[7]

Because we find no evidence the trial court made any factual determinations in construing the language of the easement, except to the extent it improperly considered the parties' subsequent actions under CACI No. 318, the proper interpretation of the easement presents a question of law we review de novo. (*Machado, supra,* 233 Cal.App.3d at p. 352.) Here, we find the language granting the easement to be clear and unambiguous. The language of the grant provided for "an easement and right of way for private driveway purposes over and along and across that portion of Lot 2 of Pine Manor which lies westerly of the northerly prolongation of the easterly line of Lot 1 of said Pine Manor." The use of the terms "over and along and across" suggests movement from one place to another. In this case, the logical start and end points are the street and the Closes' garage. Consistent with this, "driveway" is commonly defined as "a private road giving access from a public way to a building on abutting grounds." (Merriam-Webster Collegiate Dict. (11th ed., 2003) p. 382, col. 1.) While the Closes attempt to read "private driveway purposes" as an independent term, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Doing so

_____

[7]    We also find puzzling the trial court's limitation that the Closes may park their cars on the driveway so long as they do not obstruct the Swensons' access to their property. This appears to imply that so long as the Swensons can drive past the Closes' vehicles to reach their home, the Closes' encroachment is reasonable. But this would only be appropriate if the *Swensons* had an easement entitling them to unobstructed passage across the *Closes*' land. Where, as here, the Swensons own the land, consistent or prolonged parking on *their* driveway in and of itself deprives them of their access to that portion of their property.

here suggests nothing more than a right-of-way for unobstructed ingress and egress for a vehicle to drive "over and along and across" the easement between the street and the garage. Parking, as a stationary activity, is not included.

This construction is consistent with the Supreme Court's interpretation of a similar driveway easement in *Dolske*, *supra*, 58 Cal.2d 513. There, the dominant tenement included " 'the right to use as a driveway in common with grantor' " a strip of land along the edge of the lot. (*Id.* at p. 516.) After the grant was made, a house was built on the lot that extended onto the grantor's property in several places. (*Ibid.*) Dolske subsequently acquired the house and " '[a]lso [the] right to use as a driveway' the 10 by 128-foot strip adjoining her easterly property line, 'Together with the tenements, hereditaments, and appurtenances whatsoever to the same belonging or in anywise appertaining.' " (*Ibid.*) Gormely then acquired the grantor's property and constructed a fence along the property line with breaks to accommodate Dolske's encroachments and garage. (*Id.* at p. 517.)

Dolske sued to enjoin Gormley from obstructing the driveway with the fence, and Gormely cross-complained seeking removal of the encroaching portions of Dolske's home. (*Dolske*, *supra*, 58 Cal.2d at p. 517.) Following a trial, the court concluded the fence did not unreasonably interfere with Dolske's enjoyment of the driveway easement and decreed that Dolske must remove all encroachments. (*Id.* at pp. 517–518.) On appeal, Dolske contended she had the right to use the driveway for pedestrian access as well as general maintenance of that side of her property. (*Id.* at p. 519.) In rejecting this interpretation, the high court noted that " 'Driveway' is defined in Webster's New World Dictionary (1951) page 443, as 'a path leading from a garage or house to the street, used especially by automobiles.' " (*Ibid.*)

13

Although acknowledging that driveways "are commonly used for multifarious additional purposes," the court emphasized that " 'The law is jealous of the claim of an easement . . . and likewise of the extent of the rights claimed under an instrument granting an easement. The rule is that every incident of ownership not inconsistent with the easement and the enjoyment of the same, is reserved to the grantor.' " (*Ibid.*) For this reason, the court found it appropriate to narrowly construe the term "driveway" and affirm the trial court's interpretation of the easement as conveying only "a bare right to use the easement way for ingress and egress of vehicular traffic." (*Id.* at pp. 519, 521.) In so doing, the court further noted that the right to pedestrian and maintenance access were not part of using land as a driveway. (*Id.* at p. 519.)

Similarly, the plain meaning of "an easement and right of way for private driveway purposes over and along and across that portion of Lot 2 . . ." implies nothing more than a way for ingress and egress of vehicular traffic between the street and the garage of Lot 1. Given the similarity of the facts of this case to those of the *Dolske* case, we also see no reason to read in an allowance for pedestrian access where none is expressly included in the easement.[8] (See *Pasadena, supra*, 17 Cal.2d at p. 579 ["Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee"].) The Closes also have not cited any authority interpreting driveway purposes as including pedestrian use. Rather, they rely only on Streets and Highways Code section 5870, subdivision (b) which defines

_____

[8]     The Swensons' briefing makes somewhat contradictory statements regarding whether they challenge the trial court's finding that the easement allows pedestrian access. But because they appear to dispute the trial court's conclusion that unrestricted pedestrian use by the dominant tenement is allowed, we interpret the easement de novo on this issue as well.

14

"Driveway" as "a paved portion of a public street providing an unobstructed passage from the roadway to an offstreet area used for driving, servicing, parking, or otherwise accommodating motor vehicles." This definition appears to apply only to public, not private, driveways and does not include pedestrian uses.

Although driveways often are used for many of the additional purposes the Closes assert (e.g., parking, sports, storage, and entertainment), the Closes did not purchase fee ownership in a driveway. Further, they choose not to use their garage for parking,[9] and they opted not to install a walkway from the street through "the jungle" to their front door, but those choices do not justify depriving the Swensons of their right to use their own land. The Closes have only a right-of-way over a driveway and, because "the law is jealous of the claim of an easement," we must construe unambiguous easement language as reserving to the servient tenement owners, here the Swensons, "every incident of ownership not inconsistent with the easement and the enjoyment of the same." (*Dolske*, *supra*, 58 Cal.2d at p. 519.)[10]

We therefore conclude the trial court erred in interpreting the easement as including parking or pedestrian access.

---

[9] Carol stated in a request for admission that her garage was "used only for storage and tools, cleaning supplies, laundry, [and] hanging up laundry." She further admitted that the garage door opener ran out of batteries, and she never replaced them or used the garage door opener.

[10] Although the trial court declined to make a specific finding as to whether the easement allowed the Closes to place personal property on the easement, the placement of personal items on the driveway (beyond the need to briefly put something down incident to driving between the garage and the street) would be inconsistent with our interpretation of the easement.

II.

*The Trial Court Abused Its Discretion in Denying Injunctive Relief*

If we construe the easement in their favor, the Swensons contend the trial court's denial of injunctive relief must be reversed because the refusal was predicated on the court's finding that the Closes had not violated the easement. They further argue that, without an injunction, the Closes will continue to park on their property and seek to expand their easement by prescription.

We review a decision denying a request for an injunction for abuse of discretion. (See *Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850 (*Salazar*) [" ' "It is a rule so universally followed and so often stated as to need only to be referred to that granting, denial, dissolving or refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case" ' and 'will not be modified or dissolved on appeal except for an abuse of discretion' "].) "The exercise of discretion must be supported by the evidence and, 'to the extent the trial court had to review the evidence to resolve disputed factual issues, and draw inferences from the presented facts, [we] review such factual findings under a substantial evidence standard.' " (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390 (*Horsford*).)

In this case, the trial court said it considered "two interrelated questions" in evaluating the injunction[11] request: (1) whether the Swensons

---

[11]    The trial court referred to it as a preliminary injunction, but the Swensons request only an injunction in their first amended complaint. Given that the proceeding was the final trial of the matter, it does not appear the Swensons were seeking only a preliminary ruling pending a later proceeding.

16

were likely to suffer greater injury from a denial of the injunction than the Closes were likely to suffer from its grant; and (2) whether there was a reasonable probability that the Swensons would prevail on the merits. Ultimately, the trial court indicated that it was "not persuaded that [the Swensons] have satisfied their burden of demonstrating that the balance of harms weighs in favor of injunctive relief at this time or, given the Court's above finding not to accept their interpretation of the driveway easement, that they are (or will be) the prevailing parties."

We conclude the trial court's decision must be reversed because its conclusion as to both elements was based upon its incorrect interpretation of the easement. Under our construction of the easement, the Swensons are the prevailing parties, so the trial court's determination to the contrary was error. Likewise, the trial court's balancing of the harms is not supported by substantial evidence because the harms would be weighed quite differently when the Closes are viewed as routinely exceeding the scope of their rights under the easement.[12] Accordingly, in view of our interpretation of the easement, the trial court's exercise of discretion was not based on substantial evidence. (*Horsford*, *supra*, 132 Cal.App.4th at p. 390.) We therefore conclude the trial court abused its discretion in denying the Swensons' request for injunctive relief. (*Salazar*, *supra*, 9 Cal.4th at pp. 849–850.)

The question then is whether we may decide the injunction issue on the record before us or whether remand for development of the record is necessary. " 'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that

---

[12] And again, such a weighing is applicable to the decision whether to grant a preliminary injunction, not a permanent injunction. (See *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.)

17

equitable relief is appropriate.' " (*Horsford, supra*, 132 Cal.App.4th at p. 390.) "It is well settled that an injunction is an equitable remedy available generally in the protection or to prevent the invasion of a legal right. In a case such as the one before us the right and its actual or threatened invasion must be shown." (*Meridian, Ltd., v. San Francisco* (1939) 13 Cal.2d 424, 447.) A court may grant an injunction when, among other circumstances, "it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually" or "[w]hen it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual." (Code Civ. Proc., § 526, subd. (a)(1) & (3).) Indeed, an injunction against continuing trespass to land is proper, even in the absence of a showing of substantial damages, where the ongoing invasion threatens creation of a prescriptive right and repetitive suits for damages would not provide an adequate remedy. (*Mendelson v. McCabe* (1904) 144 Cal. 230, 232–233; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352 [confirming continued applicability of injunctive relief principles set forth in *Mendelson*]; see also *City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 [a permanent injunction is warranted when the party seeking relief demonstrates the inadequacy of other legal remedies].)

Here, we have established that the Swensons have a legal right to unobstructed use of the entirety of the driveway, limited only by the Closes' right to pass "over and along and across it" in a vehicle to reach their garage or the street. The Closes' pleadings, briefing, and statements at trial indicate

18

they attempted to adversely possess part of the easement and continue to assert a prescriptive right to exclusively use an undefined portion of the driveway. Thus, it is apparent that, unless enjoined, nothing prevents the Closes from continuing to park on and otherwise occupy some portion of the easement in front of their driveway in an open, notorious, continuous, and adverse manner. Therefore, entering judgment in the Swensons' favor is unlikely to provide effective relief unless accompanied by an injunction. (Code Civ. Proc., § 526, subd. (a)(3).)

It is not clear from the record why the Closes do not park in their garage, but we find no evidence indicating it could not be used for vehicle parking. As for pedestrian traffic, Carol testified that she did not construct steps up from the street to the front door because she did not have the money to do it and did not want to do so. While neither the parties nor the trial court considered whether an equitable easement was warranted under these circumstances, rightly so because it is plain from the record that the encroachments by the Closes were not innocent (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1027), it is not clear whether entry of an injunction of immediate effect would wholly deprive the Closes of safe access to their home. Accordingly, we remand for consideration of whether a delay of no more than a month in implementing the injunction is appropriate so that the Closes may clean out their garage, replace the batteries for the garage door remote, or make other necessary changes.

### III.

### *Remaining Contentions*

The Swensons request that we remand their trespass cause of action so that the trial court can assess damages. They argue that the trial court was factually incorrect in indicating that their permission negated their trespass

19

claim because they only sought trespass damages for the period after they sent the April 2020 letter revoking permission.

We decline to provide the requested relief because, even if the trial court erred in this regard or would be compelled to find otherwise in light of our interpretation of the easement, the trial court also found a failure of proof on the element of harm.[13] In particular, the court was not persuaded the Closes have disrupted the Swensons' "views of the bay and ocean."

" ' "[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*." [Citation.] Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.] This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing [party] to meet, because unless the trier of fact made specific factual findings in favor of the losing [party], we presume the trier of fact concluded that '[the party's] evidence lacks sufficient weight and credibility to carry the burden of proof.' " (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.) Here, in addition to hearing testimony from all four parties, the trial court reviewed photographic exhibits showing the view from the Swensons' property over the Closes' property. It may reasonably have interpreted the photographs that included cars parked by the Closes' home as

---

[13] " 'Trespass is an unlawful interference with possession of property.' [Citation] The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 261–262; see CACI No. 2000.)

contradicting the Swensons' claim that the vehicles disrupted their view. Accordingly, we cannot find the evidence compels a finding in the Swensons' favor as a matter of law or that remand for a determination of damages is warranted.

As for the Swensons' nuisance cause of action, the trial court concluded that they had not carried their burden of proof and the Swensons did not challenge this finding on appeal. We therefore affirm the judgment as to the private nuisance cause of action.

Finally, the Closes request that, if we overturn the trial court's ruling on the Swensons' quiet title cause of action, we modify the prescriptive easement decision as well or remand for further findings on that issue. They argue that the trial court's SOD implies a finding that they proved a prescriptive easement equal to the rights afforded by the trial court's interpretation of the easement. We decline the Closes invitation because they did not file a cross-appeal challenging the trial court's ruling on their prescriptive easement claim. (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585 [" 'To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants' "].)

## DISPOSITION

The judgment is reversed as to the Swensons' quiet title cause of action and requests for declaratory and injunctive relief. The matter is remanded with instructions to: (1) treat the easement as affording nothing more than a way for ingress and egress of vehicular traffic between the street and the garage of Lot 1, with no right to park, walk, or store items on the easement, and (2) issue an injunction consistent with this opinion. The trial court may allow a delay of no more than a month in issuing the injunction in

21

consideration of the time it may take the Closes to ready their garage for vehicle parking or otherwise arrange for alternate access to their home.  In all other respects, we affirm the judgment.  The Swensons are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.